### BOARD OF EDUCATION OF INDIAN HILL EXEMPTED VILLAGE SCHOOL DISTRICT, Plaintiff, v. BOARD OF EDUCATION OF HAMILTON COUNTY, George Guckenberger, Aud.

Common Pleas Court, Hamilton County.

No. A-127166. Decided January 14, 1952.

Robert L. Black, Jr., Cincinnati, for the Board of Education of Indian Hill.

George L. Metzger, Cincinnati, for the Board of Education of Hamilton County, Ohio.

C. Watson Hover, George S. Heitzler, Jr., Cincinnati, for the Auditor of Hamilton County, Ohio.

Frank F. Ferris II, Blue Ash, for the Board of Education of Sycamore Local School District.

## OPINION

By WEBER, J.

On May 14, 1951, the Board of Education of Hamilton County, Ohio, adopted a resolution which abolished the Indian Hill Local School District, the Madeira Local School District, the Newtown Local School District and the Terrace Park Local School District and consolidated said local school districts into a newly created local school district. The County Board took this action by virtue of the powers granted to it by §4831-1 GC, which reads in part as follows:

"A county board of education may create a new local school district from one or more local school districts or parts thereof, * * *. Such action of the County Board of Education shall not take effect if a majority of the qualified electors residing in the territory included in such newly created district voting at the last general election shall within thirty days from the

time such action is taken file with the County Board of Education a written remonstrance against it * * *."

The plaintiff, designating itself as "The Board of Education of the Indian Hill Exempted Village School District" filed a petition in which it claims that the County Board of Education acted without legal authority when it included the plaintiff in said newly created local school district. The basis of the plaintiff's claim is that on April 17, 1951, its legal status had been changed from a local school district to an exempted school district exempt from all control and supervision by the County Board of Education, by plaintiff's complete compliance with the provisions of §4830-7 GC which reads in part as follows:

"The Board of Education of any local school district which contains within its territorial boundaries: (1) all of the territory lying within the corporate limits of a village having a population of 3000 or more according to the last federal census; or (2) all of the territory lying within the corporate limits of a village having a population of 2000 or more according to the last federal census and a population outside the corporate limits of said village, as determined by a census taken by such Board of Education, sufficient to make the total population of such district 3000 or more, may, by a majority vote of the full membership of such Board of Education, declare that such district be exempt from the supervision of the County Board of Education. * * *."

The ultimate question to be determined is whether on May 14, 1951, the plaintiff was an exempted village school district, or if not technically a completely exempted village school district, whether it had so far proceeded in qualifying it as such, that the County Board of Education, on May 14, 1951, had no authority to include it in the newly created local school district.

Numerous points have been argued in support of the claim that on May 14, 1951, the Indian Hill School District did not qualify as an exempted village school district either with reference to territorial requirements or with reference to population requirements.

(1) The first principal question is—Did the Indian Hill School District on May 14, 1951, contain all the corporate area of the Village of Indian Hill?

Prior to November 7, 1950, the Indian Hill School District contained the major part of the Village of Indian Hill, a duly constituted and organized municipal corporation, classified as a village, and also unincorporated territory outside said village. Said school district did not include three certain parts

of the Village, which parts lay within three adjoining local school districts, namely, Terrace Park Local School District, Madeira Local School District and Sycamore Local School District. On November 7, 1950, each of said adjoining local school districts included all of a duly constituted and organized municipality, as well as certain unincorporated territory and also one of said parts of the Village of Indian Hill. The terrace Park School District included all of the Village of Terrace Park; the Madeira School District included all of the Village of Madeira and the Sycamore School District included all of the Village of Montgomery. At an election held on November 7, 1950, there was submitted to the electors of each of the three parts of the Village of Indian Hill which lay within the adjoining school districts the question as to the transfer of these parts of the Village of Indian Hill to the Indian Hill School District. The Board of Elections certified that with respect to each of said three parts the vote was overwhelmingly in favor of the transfer.

(1a) The principal argument in support of the claim that all of the Village of Indian Hill was not contained in the Indian Hill School District is that said elections were held under the provisions of §4831-15 GC and that the elections were not authorized by the provisions of said code section, which reads in part as follows:

"Transfer of territory mandatory upon approval by electors; * * *

"In addition to and supplementary to the provisions of §4831-14 GC, if a petition, signed by ten per centum of the qualified electors residing within that portion of a municipality which is part of a school district of another municipality, proposing to transfer such territory to the school district of the municipality of residence, so as to make the lines of such district coincide with the corporate lines of the municipality, is filed with the Board of Elections, there shall be submitted to the qualified electors of the territory affected the question of the transfer of such territory. If a majority of the electors voting on the proposal vote in favor thereof the transfer of territory shall be carried out on June 15 next following the date of such approval by the electors. * * *."

It is argued that these provisions apply only to transfers of territory to and from city school districts and exempted village school districts; that they do not authorize transfers to and from local school districts, such transfers being solely within the jurisdiction of the County Board of Education. In the case of **Board of Education of Terrace Park v. Board of Education of Indian Hill School District, et al,** Court of Appeals,

First Appellate District, 48 O. O. 254, 62 Abs 337 (CP 60 Abs 29), it was held that the transfer, by the election of November 7th, of the part of the territory of the Village of Indian Hill which lay within the Terrace Park Local School District to the Indian Hill Local School District was authorized by the provisions of §4831-15 GC. The court said:

"It is clear that the legislature had in mind the very situation here involved, that is, where a local school district including a municipality also included the area of another municipality."

Neither the Sycamore Local School District nor the Madeira Local School District were parties to that case. The Sycamore Local School District is a party to this case and it and the County Board of Education make the same claim herein that was made in that case. The case is res adjudicata as to the Terrace Park School District. The rule of law therein established applies to this case. On the question whether the elections were authorized under §4831-15 GC, the very situation involved in that case is involved in this case. In that case the Terrace Park Local School District included all the corporate territory of the Village of Terrace Park and part of the corporate territory of the Village of Indian Hill. In this case the Sycamore Local School District includes all the corporate territory of the Village of Montgomery and part of the corporate territory of the Village of Indian Hill and the Madeira Local School District includes all the corporate territory of the Village of Madeira and part of the corporate territory of the Village of Indian Hill. An attempt to distinguish the cases is based upon the claim that the Village of Montgomery is a small factor in the government of the Sycamore Local School District. For this purpose evidence was introduced to show the relationship between the Village and other parts of the school district as to school population and property tax values. The court now holds that such evidence is immaterial and incompetent. No such distinction is made in the statute or in the above cited opinion of the Court of Appeals. This court is bound by said decision and therefore holds that said elections were authorized by the provisions of §4831-15 GC.

(1b) It is further claimed that the transfer of that part of the territory of the Village of Indian Hill which lay in the Sycamore Local School District is void because of irregularities in the election proceedings which purported to accomplish the transfer. Only part of this area was contained in the Village of Indian Hill as originally incorporated and is located entirely within said Sycamore Township and in precinct C

of the Village of Indian Hill; the remainder of this area adjoins the original north boundary of the Village of Indian Hill and is located partly in Sycamore Township and partly in Symmes Township. Application for annexation of this remaining part was made to the County Commissioners and a complete transcript of the annexation proceedings was filed with the clerk of the Village of Indian Hill on May 17, 1950, and council of the Village of Indian Hill passed an Ordinance of Acceptance on September 26, 1950. The transcript of the annexation proceedings was filed with the Auditor of Hamilton County on October 16, 1950, and received by the Recorder of Hamilton County on November 10, 1950. The annexed part was placed part in Precinct C and part in Precinct D of the Village of Indian Hill.

For the purpose of transferring to the Indian Hill School District, under the authority of §4813-15 GC, the territory which was part of the original incorporation of the Village of Indian Hill and also the territory covered by the annexation proceedings, there was filed with the Board of Elections on September 27, 1950, a petition by the election of Precinct C and on October 9, 1950, a petition by the electors of that portion which was recently annexed. The same ballot was submitted to the electors of both parts and it referred to the territory to be transferred as being "in Precincts C and D." The Board of Elections certified that the result of the election held on November 7, 1950, was 51 in favor of and one against the transfer. Assuming that there was an irregularity because the same form of ballot was submitted to the two different parts of territory, each of which had filed petitions relating only to its particular territory, such irregularity in no way affected the result of the election and therefore did not affect the validity of the transfer. **State, ex rel. Duffy v. Sweeney, 152 Oh St, 308, 40 O. O. 358.**

It is further claimed that the transfer of the so-called annexed territory is void because, at the time that the petitions were filed on October 9, 1950, such territory was not then a part of the Village of Indian Hill inasmuch as the annexation had not then taken effect, and therefore the petitions were not signed by qualified electors residing within that portion of the municipality, as required by **§4831-15 GC.**

Sec. **3556 GC** provides:

"When the resolution or ordinance, accepting such annexation, has been adopted the territory shall be deemed a part of the municipality, and the inhabitants residing thereon shall have all the rights and privileges of the inhabitants within the original limits of the municipality."

However, it is argued that sixty days must elapse after the transcript is filed with the County Recorder. But this provision of the statute does not apply where the annexation petitions are initiated by the freeholders of the territory, as in this case. In such a case the Ordinance of Acceptance is the final step in the proceedings. Under the provisions of §3550 GC action by council, either to accept or reject the annexation, is taken at its next regular session, after the expiration of sixty days after the transcript is filed with the auditor or clerk of the municipality, said sixty-day period being allowed by §3553 GC for the filing of an injunction by any interested person. In this case a transcript was filed with the clerk of the Village of Indian Hill on May 17, 1950. After the lapse of more than sixty days thereafter, no injunction having been filed, and at its next regular meeting on September 26, 1950, council adopted an Ordinance of Acceptance. The sixty-day period has no relation to the filing of the transcript with the county recorder and it was so held in the case of State ex rel Village of South Brooklyn v. Craig, 21 C. C. 13:

"Syllabus 2. On the passage and legal publication of a municipal ordinance accepting an application for annexation of certain territory, such territory becomes a part of the village, although the transcript, map and other papers were not filed for record until a later date."

It is also argued that the ordinance did not go into effect until thirty days after September 26, 1950, because of the provisions of §4227-2 GC which reads in part as follows:

"Any ordinance, or other measures passed by the council of any municipal corporation shall be subject to the referendum except as hereinafter provided. No ordinance or other measure shall go into effect until thirty days after it shall have been ∗ * * passed by the council in a village, except as hereinafter provided."

There is an inconsistency between this section and §3556 GC which provides that when the ordinance of acceptance is adopted the territory shall be deemed a part of the municipality. The inconsistency is explained by the fact that the referendum law was passed by the legislature a considerable time after the enactment of §3556 GC. However, since §3556 GC has not been expressly repealed, both sections must be given full force and effect if possible. It is clear that under §3556 GC the territory becomes annexed upon the passage of the ordinance. Sec. 4227-2 GC makes the ordinance subject to a referendum that is the ordinance will be void only if there is a referendum within thirty days and the voters of

the municipality cast an unfavorable vote; otherwise the ordinance is valid from the date of its passage on September 26, 1950. The principle applicable is set forth in the case of **Roettker v. City of Cincinnati, et al, 56 Oh Ap, 464, 9 O. O. 77:**

"Syllabus 1. Annexation of territory to a municipality becomes complete upon the passage of the ordinance accepting the territory under §3556 GC; subject, however, to the contingency that such annexation may be voided by the municipality by its refusal to accept the county auditor's apportionment of indebtedness and division of funds as provided by §3557-1 GC." (Which provides that the passage of a resolution or ordinance accepting the apportionment of funds is necessary to the validity of the annexation.)

"Syllabus 2. In such case the passage of a resolution accepting the apportionment validates the annexation which becomes effective from the date of the ordinance accepting the territory under §3556 GC."

It is further contended that even if the annexation became effective on September 26, 1950, the persons who signed the petition on or before October 9th were not at that time qualified electors of the municipality, because they had not been residents of Precincts C and D forty days prior thereto as required by §3785-30 GC. There is no evidence that any signer of the petition was not a resident of the particular territory which was later included in Precincts C and D. **Sec. 4885-31 GC,** provides that "that place shall be considered the residence of a person in which his habitation is fixed." Fixed habitation for the required period in a particular territory, and not the technical designation of that territory for election purposes, determines the right to vote.

**State, ex rel. Ehring v. Bliss, et al., 155 Oh St, 99, 44 O. O. 117.**

The court is of the opinion that there was no irregularity in the election which would invalidate the transfer of the so-called annexed territory, but, if so, the election was not necessary to transfer said annexed territory to the Indian Hill School District, the transfer having taken place automatically as a consequence of the annexation, as provided in §4830-5 GC, which reads:

"When territory is annexed to a city or village, such territory thereby becomes part of the city school district or **the school district of which the village is a part,** and the legal title to school property of such territory for school purposes shall be vested in the board of education of the city **or village school district.** (Emphasis added.)

The claim that the above section of the code applies only when territory is annexed to city and exempted village school districts is untenable. A brief reference to the

history of this section of the code renders clear the intention of the legislature in passing the amendment. Said section, as former §4690 GC reads:

"When territory is annexed to a city or village said territory thereby becomes a part of the city or village school district and the legal title of school property in such territory for school purposes shall be vested in the board of education of the city or village school district."

When the legislature abolished village school districts, other than exempted village school districts, it became necessary to change the wording contained in said §4690 GC. If it were intended that the provision of the section should apply only to city and exempted village school districts, the insertion of the word "exempted" before the words village school district would have accomplished that result. Instead, the legislature substituted a lengthy descriptive clause, "the school district of which the village is a part." There is no ambiguity in these words. The ambiguity is created by the failure of the legislature to make a similar substitution when it located the title of the school property of such territory in the board of education of the village school district. The words "village school district" now are too comprehensive and have no definite meaning and therefore it must be assumed that such failure was an oversight.

(1c) It is further claimed that the territory which purported to be transferred by the election had not been actually transferred on April 17, 1951, because of the provision of §4831-15 GC, "the transfer of the territory shall be carried out on June 15th next following the date of such approval by the voters." This contention is unsound. The legal status of the territory as being contained in the Indian Hill School District was mandatorially fixed by the provisions of §4831-15 GC as a consequence of the vote favoring such transfer. The only purpose of the above provision is to avoid confusion in and disruption of the administrative operation of the school during the school year.

Assuming that the annexed territory was transferred to the Indian Hill School District automatically and consequently that the election with reference to that territory was unnecessary, it is clear that the territory which was originally a part of the Village of Indian Hill was transferred by the election. The testimony is uncontradicted that the records of the Board of Elections show that the vote in said territory was 17 in favor of and one against the transfer.

The court holds that on April 17, 1951, the Indian Hill School District legally contained all the territory of the Village of

Indian Hill and that said school district was territorially quali-
fied to declare itself an exempted village school district.

(2) The second principal question is whether the Indian
Hill Local School District, on April 17, 1951, qualified as to
population to declare itself an exempted village school dis-
trict.

(2a) **Sec. 4830-7 GC,** requires that the village contain a popu-
lation of 2,000 or more according to the last federal census.
Preliminary and tentative figures had been obtained from the
Department of Commerce on April 5, 1951, and prior thereto,
showing that the population of Indian Hill as of April 1, 1950,
was approximately 2071. The final official figure received
from the Department of Commerce, dated June 12, 1951, showed
a population of 2090 as of April 1, 1950. Although this final
official certification was not received until June 12, 1951, such
delay does not alter the fact that "according to the last federal
census" the population of Indian Hill Village was 2,000 or
more and that this particular requirement of the statute was
met.

(2b) Said **Sec. 4830-7 GC** further requires that the school
district contain "a population outside the corporate limits
of said village, as determined by a census taken by such board
of education (the board of the local school district), sufficient
to make the population of such district 3000 or more * * *

"A census taken by the board of education of a local school
district, of territory outside the corporate limits of the vil-
lage, shall be taken by persons appointed by said board of
education. Each person so appointed shall take an oath or
affirmation to take such a census accurately. He shall make
his return under oath to the clerk of the board. The clerk
of the board shall send certified copies of such census to the
county auditor and to the superintendent of public instruction.
Such census shall be approved by the superintendent of public
instruction before the school district is deemed to have suf-
ficient population to meet the requirements of an exempted
village school district."

The uncontradicted evidence shows that such a census was
taken in the manner required by law and that the population
in said unincorporated territory was 1819, making the total
population in the entire school district 3909. The forms
used in taking the census were not only approved by the
Superintendent of Public Instruction but were made up by
him. Copies were filed with the county auditor and the
originals were received by the Superintendent of Public In-
struction on March 31, 1951. However, it is claimed that the
population requirement was not met on April 17, 1951, because

the Superintendent of Public Instruction had not at that time approved the census, such approval being required "before the school district is deemed to have sufficient population." The Superintendent of Public Instruction knew that the plaintiff contemplated adopting a Declaration of Exemption in time to file the same, as required by the statute, with the County Board of Education before May 1, 1951. The Superintendent of Public Instruction was urged to take such action. The Superintendent of Public Instruction is a party to this suit. No evidence was offered by him to the effect that the census was in any respect irregular or inaccurate. His only excuse for not taking action was that his office had established a policy not to approve until all other exemption requirements of the statute had been satisfied, including territorial qualifications and federal census certification. This is not 'a legitimate excuse for the delay; the last paragraph of §4830-7 GC deals only with the census of the unincorporated territory and it is "such census (which) shall be approved." Neither the Superintendent of Public Instruction nor the County Board of Education has any right or duty with reference to a local school district qualifying for exemption or with the wisdom of such action. The sole function delegated to any board, other than the particular local school board, is that the Superintendent of Public Instruction shall approve, that is verify the accuracy of, the census of the unincorporated territory. It is the court's opinion that the legislature did not intend to vest the Superintendent of Public Instruction with the power to unjustifiably delay approval or disapproval of the census and thus make it impossible for the local school district to declare exemption, although in fact fully qualified to do so and desiring to do so. The only purpose of this provision is to insure that the unincorporated territory has sufficient population to make the total population of the school district at least 3,000

The court holds that the Indian Hill Local School District, on April 17, 1951, was qualified as to population to declare itself an Exempted Village School District.

(3) The third question is whether the Declaration of Exemption was adopted by the Indian Hill School District in a legal manner. Sec. 4830-7 GC, provides in part:

"The board of education of any local school district * * *, may, by a majority vote of the full membership of such board of education, declare that such district be exempt from supervision of the county board of education. * * *"

Sec. 4833-2 GC, provides in part:

"A special meeting of the board of education may be called

by the president or clerk thereof or by any two members, by serving a written notice of the time and place of such meeting upon each member of the board at least two days prior to the date of such meeting. * * *"

The meeting at which the Declaration of Exemption was adopted was held on April 16, 1951. All five members of the board were notified of the meeting and its purpose but the notice was not in writing. The minutes of the board show that all five members were present and that three, naming them, voted for the resolution and that two, naming them, passed. The purpose of a written notice, whenever required for a meeting of any board, is to insure that a vote on a measure will not be taken without giving every member an opportunity to be present and take part in the business of the meeting. If all of the members of the body are actually present, and particularly if their presence is in response to some kind of a notice, the purpose of the written notice has been served and its omission does not invalidate the vote. This is the rule with reference to private corporations and there is no reason why the same rule should not be applied to public boards.

"It has been stated as a general rule that the legality of a directors' meeting and the validity of action taken thereat depend upon the giving of the required notice, but the rule does not apply if all directors attend and participate in the meeting." Davies Ohio Corporation Law, at page 855.

"Another exception to the rule is, that notice may be dispensed with where all the directors are present and participate in the proceedings. The only object of notice is that the directors have an opportunity of being present at the meeting and taking part in its proceedings." Thompson, Corporations (3rd edition), Volume II, pages 675-6.

"The validity of a meeting is not affected by failure to give notice, even when notice was expressly required by the charter or by-laws, if all the directors were present and raised no objection. In other words, presence at the meeting waives the want of notice, even though the director subsequently departs. Thus it has been held that the fact that the meeting of the directors was held without a formal call first being had, and notice thereof given to the members, did not operate to invalidate it, or to render the proceedings which were taken at it void, if every member of the board was present, and their joint action has completely bound the corporation as if the meeting had been called with due formality." Fletcher, Cyclopedia of Private Corporations, Volume II, Section 411, pages 196-7.

The court holds the Resolution Declaring Exemption was legally adopted.

The final claim of the County Board of Education is that regardless of what steps were taken, prior to May 14, 1951, by the Board of Education of the Indian Hill School District, in compliance with the statutes, to attain the legal status of an exempted village school district, said school district remains a local school district in all respects under the supervision of the County Board until July 1, 1951. This claim is based upon that part of §4830-7 GC, which reads:

"When the board of education of a local school district notifies the county board of education, on or before May 1st of any year, that it has adopted by a majority vote of its full membership, a declaration that such school district shall be exempt from the supervision of the county board of education, such local school board shall be exempt from the supervision of the county board of education for the school year commencing July 1st following the date of such notification and thereafter, except as provided by law."

The relation between the dates May 1st and July 1st and the active school year period indicates a clear intention that the change in the legal status of the school district which took place prior to May 1st should not be permitted to confuse or disrupt the current administrative operation of the school district. However, if the County Board of Education, during the period between the notification of a valid declaration of exemption and July 1st, is further permitted to so change the territorial boundaries of the school district, and possibly its population content, as to disqualify the school district for exemption, such action would nullify and make impossible of effectuation the mandatory provision that "such local school board shall be exempt from the supervision of the county board of education for the school year commencing July 1st following the date of such notification."

The Board of Education of the Indian Hill School District on April 17, 1951, had taken all the steps required of it and within its power to qualify as an exempted village school district. It may be conceded that the failure of the State Superintendent of Public Education to approve the census of the unincorporated territory and the delay in obtaining the final official certificate of the federal census of the incorporated territory and the postponement until July 1st of putting into administrative effect the previously declared exemption prevented the exact and complete compliance with the provisions of §4830-7 GC, for exemption. Nevertheless the passage of the Resolution of Exemption on April 16, 1951, and the receipt of the notice thereof by the County Board of Educa-

tion on April 17, 1951, deprived the County Board of Education of jurisdiction, by its resolution of May 14, 1951, to abolish the Indian Hill School District and consolidate it with other school districts into a new local school district.

**Trumbull County Board of Education v. The State, ex rel. Van Wye, 122 Oh St, 247:**

"1. Where power is given under the statutes to two different governmental boards to act with reference to the same subject-matter, exclusive authority to act with reference to such subject-matter is vested in the board first acting under the power.

"3. When a court is asked to exercise the extra-ordinary power of mandamus, it is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue."

The principles enunciated in the above case apply to and control this case.

THE COURT HOLDS:

That the Indian Hill Local School District became an Exempted Village School District on April 17, 1951; that the Hamilton County Board of Education on May 14, 1951, had no authority to abolish the Indian Hill School District and to include it in a new local school district and that such action is null and void; that the temporary restraining orders heretofore issued in this case should be and are hereby dissolved; that the Hamilton County Board of Education should be and it is hereby permanently enjoined from taking any action which will affect the status of the Indian Hill School District as an Exempted Village School District or interfere with its rights or duties as an Exempted Village School District.

The costs of this action should be paid one-half by the Board of Education of the Indian Hill Exempted Village School District and one-half by the Hamilton County Board of Education.