CLEVELAND CITY SCHOOL DISTRICT, APPELLANT, *v.*
CLEVELAND TEACHERS UNION, APPELLEE.

(No. 41938—Decided April 21, 1980.)

*Messrs. Petro & Troia* and *Mr. J. William Petro,* for appellant.

*Messrs. Berkman, Gordon, Levy, Murray & Palda, Mr. Bernard A. Berkman* and *Mr. George W. Palda,* for appellee.

JACKSON, P. J.   On December 3, 1979, plaintiff-appellant, Cleveland City School District (School Board or Board), filed a complaint in the Court of Common Pleas requesting the court to issue a temporary restraining order and a temporary injunction ordering the city's teachers back to work. The School Board asserted that the ongoing teachers' strike was illegal under the Ferguson Act (R. C. Chapter 4117).

On December 10, 1979, the School Board submitted a pro-

posed collective bargaining agreement to the defendant-appellee, Cleveland Teachers Union (Union). The following day, the court ordered the Union to submit the proposed agreement of December 10, 1979, to the Union membership for ratification. The membership voted not to accept the proposed contract. On December 31, 1979, the court ordered both the School Board and the Union to commence negotiations at the Bond Court Hotel in Cleveland, Ohio. Both parties were ordered to negotiate in good faith until further order of the court. The court ordered that all members of the School Board and all officers of the Union were to remain within the hotel until further order of the court. The obvious purpose of this order was to ensure that any agreement reached by the negotiators had the approval of the School Board and Union officials. The court also enjoined the teachers' strike, effective January 2, 1980.

On January 2, 1980, the president of the School Board informed the court that an agreement had been reached. The court thereupon stayed its order of December 31, 1979. The attorney for the School Board reduced the agreement to writing, and this written agreement was ratified by the membership of the Union. The written agreement contained the following provision:

"17. *Board Action and Execution.* The Board expressly agrees that it will pass a formal resolution or resolutions, and take whatever other action is necessary, to make this Agreement legally binding upon the Board. Execution of this Agreement by any person purporting to represent the Board establishes that said person has been duly authorized by the Board to execute this Agreement."

The School Board, however, thereafter refused to execute the agreement.[1] Consequently, on January 11, 1980, the court entered the following order:

---

[1] The attorney for the School Board at oral argument stated that the Board amended the proposed collective bargaining agreement on January 10, 1980, after the written agreement was ratified by the Union.

According to the School Board's brief on appeal, the Board refused to execute the written agreement because a material provision orally agreed to was inadvertently omitted from the written agreement drafted by the Board:

"The District had the oral agreement printed but in doing so, through inadvertence, the time constraints, and the pressures surrounding the situation, omitted

"Upon further consideration of these matters, the Court finds that:

"1. The parties hereto have negotiated an agreement which was presented by the plaintiffs [the School Board] as an offer to the defendants [the Union] on the second day of January, 1980. That the defendants, by ratification of its membership, accepted said offer on the third day of January, 1980. That said agreement is fair, equitable and accepted [*sic*] to both litigants, as evidenced in said agreement.

"2. The Court finds further that the defendants have ended their work stoppage voluntarily, and that they returned to their duties in the Cleveland City School District on the fourth day of January, 1980;

"3. The Court finds further that the plaintiff, Cleveland City School District, has reopened its school buildings of that district to all employees and students, and that said school system is in operation.

"WHEREFORE, it is hereby ordered, adjudged and decreed that said agreement be, and it is hereby incorporated herein, and made a part hereof as if fully rewritten herein. Said agreement, marked and identified as Exhibit 'A', and attached hereto, is ordered into execution forthwith."

On January 30, 1980, the School Board filed a motion to vacate the court's order of January 11, 1980, citing two grounds: First, that the court lacked subject matter jurisdiction to issue such an order; and second, that the court erred in finding that the agreement as written was binding on the Board. On February 8, 1980, following a hearing, the court overruled the motion to vacate. The same day the Board filed a notice of appeal to this court from the January 11, 1980 decision of the trial court. The School Board assigns four errors for our review.

I.

The gist of the first three assignments of error [2] of the School Board is that the trial court was without authority to

one material provision." (Appellant's brief.)

There is no evidence in the record of the proceedings before the trial court that the provision in question was omitted inadvertently.

[2] *First Assignment of Error:*

"The court has no jurisdiction to compel agreement to a contract which was not ratified by the board of education at a formal meeting by resolution."

enforce the collective bargaining agreement which was proposed by the Board and accepted by the Union.

The law is well established in Ohio that a court is "without any power or jurisdiction to compel mediation or to order collective bargaining" between public employers and public employees. *Cuyahoga Co. Bd. of Mental Retardation* v. *Association* (1975), 47 Ohio App. 2d 28, 41. In the case at bar, however, the School Board did not object to the court's order of December 31, 1979, requiring the parties to negotiate in good faith. The attorney for the Board admitted that the order of December 31, 1979 was requested, accepted and welcomed by the Board. Moreover, the Board has not challenged the validity of the December 31st order by means of this appeal; we therefore express no opinion as to its validity.

The order of January 11, 1980, in effect, set forth the reasons which prompted the court not to enjoin the teachers' strike. The court found that the teachers had returned to work and the schools had reopened pursuant to a binding collective bargaining agreement, which the parties were ordered to follow. The trial court did not dictate the terms of the agreement; instead, it enforced the contract as agreed to by the parties.

It is beyond question that a school board may enter into a collective bargaining agreement with its employees, and that the courts may enforce such an agreement. The Ohio Supreme Court has held that:

"A board of education is vested with discretionary authority to negotiate and to enter into a collective bargaining agreement with its employees, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law." *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 (paragraph one of syllabus).

In that case the court noted that:

"* * * [W]here a school board has benefited from an agreement and seeks to have it upheld, the courts generally apply

---

*Second Assignment of Error:*

"The court has no jurisdiction to enter the order of January 11, 1980, as said order is beyond the scope of the authority and power of the court."

*Third Assignment of Error:*

"Plaintiff, Cleveland City School District's motion for relief from order should have been granted."

normal principles of contract law to test the contract's validity and binding effect." *Id.,* at 132.

We are persuaded that the trial court had subject matter jurisdiction to find that the parties had entered into a binding collective bargaining agreement, and to enforce the agreement. These assignments of error are without merit.

## II.

In the fourth error assigned by the School Board, it is contended that "no contract existed between the parties." The Board sets forth two reasons why the contract is not binding on the Board: (1) The contract was not "adopted by the board by resolution at a formal meeting as set out in Ohio Revised Code Section 3313.33"; and (2) the written contract was not signed by the Board.

Pursuant to the provisions of R. C. 3313.33 "***[n]o contract shall be binding upon any board [of education] unless it is made or authorized at a regular or special meeting of such board." The contract need not be "adopted***by resolution," nor must there be a "formal meeting." The authority for holding a "special meeting" is provided by R. C. 3313.16:

"A special meeting of a board of education may be called by the president or treasurer thereof or by any two members, by serving a written notice of the time and place of such meeting upon each member of the board at least two days prior to the date of such meeting. Such notice must be signed by the official or members calling the meeting. For the purpose of this section, service by mail is good service."

The Revised Code does not define the term "special meeting." However, it is the opinion of this court that a meeting which all the members of the board of education attend for the purpose of conducting the business of the board constitutes a "special meeting," even if notice of the meeting has not been given in accordance with R. C. 3313.16. All the members of the School Board were present at the negotiations which, on January 2, 1980, resulted in the proposed collective bargaining agreement. We hold that these negotiations constituted a "special meeting" at which the proposed agreement was "made or authorized."

The refusal of the School Board to sign the written agreement does not render the agreement invalid. A board of educa-

tion may be bound by oral contracts of employment with individual teachers, for R. C. 3319.08 provides, in part, that:

"If a board of education adopts a motion or resolution to employ a teacher under a limited or continuing contract and the teacher accepts such employment, the failure of such parties to execute a written contract shall not avoid such employment contract."

When it offered the written contract to the Union for acceptance, the School Board had, as a matter of law, already accepted the terms of the agreement. Upon offer and acceptance the contract was binding on both parties. *Realty Development, Inc., v. Kosydar* (Hamilton Co. Ct. of Appeals, 1974), 67 Ohio Opinions 2d 67. This assignment of error is also without merit.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

PATTON and PARRINO, JJ., concur.

PATTON, J., concurring. I concur with Part I of the majority opinion and with that portion of Part II concerning the meaning of the term "special meeting." I do not agree with the reasoning of the majority concerning the validity of the agreement reached by the parties, but rather, concur in the result for the reasons set forth below.

Initially, it must be noted that the only verbatim transcript provided this court is from the February 8th hearing on several motions, including the School Board's motion for relief from the January 11th order of the court. That transcript contains no sworn testimony but rather the arguments presented on behalf of the parties. More importantly, those hearings were held after the School Board had filed its notice of appeal with this court. Thus, the trial court was without jurisdiction to rule on the motion for relief from judgment. *Vavrina* v. *Greczanik* (1974), 40 Ohio App. 2d 129, 132. For the foregoing two reasons, this court may not consider as evidence any of the statements made to the court at that hearing.

With respect to the validity of the agreement reached between the parties, two questions are presented: (1) Whether the oral agreement reached by the parties on January 2nd was binding, and if not, (2) whether the agreement reduced to written form by the School Board became binding on the parties when ratified by the Union.

## I.

Parties to a contract may be bound by their oral agreements although they contemplate executing a final written agreement containing all of the provisions upon which they agreed. The question of whether the parties intended to be bound prior to the execution of the formal written contract is a question of intent and an issue of fact. *Arnold Palmer Golf Co.* v. *Fuqua Industries, Inc.* (C.A. 6, 1976), 541 F. 2d 584, 587-588; *Banking & Trading Corp.* v. *Floete* (C.A. 2, 1958), 257 F. 2d 765, 769; *Hamilton Foundry & Machine Co.* v. *International Molders & Foundry Workers Union* (C.A. 6, 1951), 193 F. 2d 209, 213-214. Various factors should be taken into consideration in determining the parties' intent.[3] In some cases, it has been held that an oral agreement will be found not to bind the parties only where there is "***clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both***." *Richard A. Berjian, D.O., Inc.,* v. *Ohio Bell Tel. Co.* (1978), 54 Ohio St. 2d 147, 151. In the instant case there is a dearth of such "clear evidence."

In my opinion, the facts surrounding the formation of the contract in question show an intent on part of the School Board and Union officials to be bound when the agreement was orally agreed to and announced on January 2, 1980.

However, since the Union could not be bound at that time without ratification by its members, it would be inequitable to hold the School Board bound by the oral agreement before ratification by the Union. The agreement as reached orally bound the parties upon ratification by the Union.

## II.

Following the reaching of the oral agreement, the at-

---

[3] The following factors are often used in determining the intention of the parties:

" '***whether the contract is of that class which are usually found to be in writing, whether it is of such a nature as to need a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. If a written draft is proposed, suggested, or referred to during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract.'

"***Whether during the negotiations the parties have fully agreed upon all of the details of the transaction,***." *Banking & Trading Corp.* v. *Floete, supra,* at 769.

torney for the School Board reduced the agreement to writing. The School Board claims that in so doing, the attorney inadvertently omitted an important provision of the contract. The Union, on the other hand, denies that this alleged omitted provision was a part of the agreement reached by the parties.

The Union ratified the agreement as written on January 3, 1980. Subsequently, the School Board refused to adopt the contract without the addition of the allegedly omitted provision.

The School Board's argument before this court that the contract is invalid due to a mutual mistake is initially very persuasive. However, the record contains no testimony, affidavits or other evidence to show that the missing provision was, in fact, agreed to at the negotiations. As an appellate court, we are, of course, bound by the record before us. Thus, there can be no claim by the School Board that there existed any mutual mistake in the adoption of the written agreement. A purely unilateral mistake will not affect the validity of the contract. *McDonald* v. *French* (1940), 32 Ohio Law Abs. 356, 359.

Absent a mutual mistake, once the School Board's offer of the written contract was accepted, the School Board could no longer revoke its offer. *Wargo Builders* v. *Cox Plumbing & Heating* (1971), 26 Ohio App. 2d 1. Nor does the fact that the School Board did not sign the contract before offering it to the Union for ratification alleviate the School Board's obligations under the contract. To hold otherwise would be to elevate form over substance.

Even assuming that the omitted provision was part of the agreement reached by the parties at the negotiations, such fact would be insufficient, given the record before us, to reach a different result. In order for a contract to be voidable or modified on the grounds that there existed a mutual mistake in the formation of the contract, it must be proven that the mistake concerned a material matter. *Cincinnati* v. *Fox* (1943), 71 Ohio App. 233, 240. There is no evidence before us concerning the effect of the allegedly omitted provision on the various parties to this suit. Without such evidence, we cannot determine whether the provision was "material."

For the foregoing reasons, I concur in the conclusion of the majority that the School Board and the Union were bound by the written agreement as prepared by the School Board and ratified by the Union on January 3, 1980.