OPINION
{¶ 1} This appeal involves a number of issues arising from Ohio's Sunshine Law and from statutory notice provisions governing meetings held by a board of education. The Appellants are the Board of Education of the East Liverpool City School District ("the Board") and school board president Maureen Aronoff ("Aronoff"), who defended against a declaratory judgment action filed by another school board member, Appellee Richard Wolf ("Wolf"). Wolf's complaint alleged that the Board failed to provide proper advance notice of four meetings held in the first half of 2002. The trial court granted Wolf summary judgment with regard to meetings held on February 27, March 8, and April 5, 2002. For the reasons that follow, we must reverse the trial court judgment as to all three meetings. As the parties did not appeal the court's judgment concerning the May 13, 2002, meeting, that aspect of the judgment is affirmed.
 FACTUAL AND PROCEDURAL BACKGROUND {¶ 2} Wolf and Aronoff were members of the Board in 2001 and 2002. Mr. Donald Lowe was superintendent of the school district at that time. Mr. Lowe's contract was due to expire on July 31, 2002. Some members of the Board were not planning to renew Mr. Lowe's contract. Mr. Lowe himself had given indications to the Board that he had decided to retire. R.C. 3319.01 requires a board of education to notify the superintendent in writing of its intent not to renew the superintendent's employment contract. This notice must be given by March 1st of the year that his or her contract expires. If the notice is not given by that time, the contract is automatically renewed for one year.
 {¶ 3} It appears that Aronoff was not aware of this statutory provision until she learned about it during a seminar for school board presidents that she attended on February 9, 2002. The Board took no action on Mr. Lowe's contract at the February 11, 2002, regularly scheduled board meeting. The next regularly scheduled meeting was set for February 25, 2002. Aronoff was unable to attend that meeting due to illness. Aronoff learned the next day that the Board again took no action on Mr. Lowe's contract. Aronoff organized a special board meeting for February 27, 2002, which was the only day available before March 1st on which a quorum could be assembled.
 {¶ 4} Mr. Lowe had earlier informed the Board that Wolf was seriously ill, was having open heart surgery, and would not be attending board meetings in February or March.
 {¶ 5} Wolf was not given written notice of the February 27, 2002, special meeting. Wolf admitted he had actual knowledge that there would be a meeting on February 27, 2002. (11/15/02 Defendants' Motion for Summary Judgment, First Request for Admissions, No. 1.) Aronoff also notified the news media by phone that the Board was holding an emergency meeting on February 27, 2002. (11/15/02 Defendant's Motion for Summary Judgment, Aronoff affidavit.)
 {¶ 6} The Board voted not to renew Mr. Lowe's contract at the February 27, 2002, meeting.
 {¶ 7} The Board held a special meeting on March 8, 2002, to interview potential candidates for the superintendent's position, and held another special meeting on April 5, 2002, to discuss those candidates. The Board subsequently held a regular meeting on May 13, 2002.
 {¶ 8} On June 12, 2002, Wolf filed a complaint for injunctive and declaratory relief in the Columbiana County Court of Common Pleas. Wolf alleged that the four Board meetings discussed above were illegally convened due to violations of R.C. § 3313.16
(requiring written notice to each school board member of all special meetings of the board) and R.C. 121.22(F) and (G) (containing Sunshine Law notice requirements for regular, special, and emergency meetings of public bodies).
 {¶ 9} During discovery, Appellants delivered requests for admissions to Wolf pursuant to Civ.R. 36. Wolf failed to timely respond to the requests for admissions.
 {¶ 10} On November 15, 2002, Appellants filed a motion for summary judgment on all issues. Appellants relied in part on Wolf's failure to respond to their requests for admissions. On November 20, 2002, Wolf requested leave to file late responses to the requests for admissions, but the trial court denied the motion because Appellants had already relied on the admissions. (12/3/02 J.E.)
 {¶ 11} On December 3, 2002, Wolf filed a motion for summary judgment, setting forth individual arguments as to each of the four meeting dates. The February 27, 2002, meeting was invalid, according to Wolf, because he did not receive written notice of the meeting as required by R.C. § 3313.16 and because the meeting violated R.C. 121.22. The March 8, 2002, meeting also violated R.C. 3313.16, according to Wolf, because he was not notified of the meeting in writing. The April 5 and May 13, 2002, meetings violated R.C. § 121.22(G), according to Wolf, because the Board did not follow the proper procedure for entering into executive session.
 {¶ 12} On December 6, 2002, the Board filed a response to Wolf's motion for summary judgment.
 {¶ 13} On December 16, 2002, the trial court filed a detailed judgment entry dealing with both motions for summary judgment. The court found that Wolf admitted he had actual knowledge of the February 27, 2002, meeting. The court held, though, that R.C.3313.16 requires written notice of all special meetings of the Board, and is silent concerning the possibility of a board member who has actual notice of the meeting. The court concluded that the meeting violated R.C. 3313.16. The meeting was also found to violate R.C. 122.22(F), which requires a public body to give 24-hour advance notice to the news media of any special meetings unless the meeting is an emergency, in which case the news media are entitled to immediate notification. The court held that there was no emergency to justify calling the February 27, 2002, meeting because the Board could have dealt with the non-renewal of Mr. Lowe's contract during the February 11 and February 25, 2002, meetings. The court held that the February 27, 2002 and March 8, 2002, meetings violated both R.C. 3313.16 and 121.22 and were invalid. The court decided that the April 5, 2002, special meeting violated R.C. 122.22(F) because the Board did not give the news media any notice of the purpose of the meeting. Finally, the court held that the May 13, 2002, meeting did not violate the law.
 {¶ 14} Wolf's motion for summary judgment was granted with respect to the meetings of February 27, March 8, and April 5, 2002, and the trial court declared all actions taken at those meetings to be a nullity. The court enjoined the Board from acting on any resolutions taken at those meetings. The court granted the Board's motion for summary judgment with respect to the May 13, 2002, meeting, but nullified any action taken at the meeting that may have arisen out of actions taken at the three meetings found to be invalid.
 {¶ 15} Although the trial court deferred the determination of attorney fees, this issue was subsequently decided on December 30, 2002.
 {¶ 16} Appellants filed a timely notice of appeal on January 14, 2003.
 FIRST, SECOND AND THIRD ASSIGNMENTS OF ERROR {¶ 17} Appellants' first, second and third assignments of error are as follows:
 {¶ 18} "The Columbiana County Court of Common Pleas (`Trial Court') erred in granting the Motion for Summary Judgment of Plaintiff/Appellee Richard Wolfe [sic] (`Appellee') and denying the Motion for Summary Judgment of Defendants/Appellants East Liverpool City School District Board of Education and Maureen Aronoff (`Appellants') regarding whether Appellants gave the news media proper notice of the February 27, March 8 and April 5, 2002 meetings under O.R.C. § 121.22(G).
 {¶ 19} "The Trial Court erred in granting Appellee's Motion for Summary Judgment and denying Appellants' Motion for Summary Judgment regarding whether Appellants properly entered executive session during the April 5, 2002 meeting under O.R.C. §121.22(G).
 {¶ 20} "The Trial Court erred in granting Appellee's Motion for Summary Judgment and denying Appellants' Motion for Summary Judgment regarding whether Appellants gave Appellee proper notice of the February 27 and March 8, 2002 special meetings under O.R.C. § 3313.16."
 {¶ 21} For the sake of clarity, we will reorganize Appellants' arguments on appeal so that each of the three board meetings is treated separately. Appellants' three assignments of error all deal with the trial court's decisions to sustain or overrule the parties' motions for summary judgment. An appellate court conducts a de novo review of a trial court's decision to grant a motion for summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is properly granted where the moving party demonstrates that: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. Applied Cos.
(1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, quoting Templev. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
 {¶ 22} Once the moving party meets this initial burden, the opposing party bears a reciprocal burden in responding to the motion. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,526 N.E.2d 798. Under Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial."Chaney v. Clark Cty. Agricultural Soc., Inc. (1993),90 Ohio App.3d 421, 424, 629 N.E.2d 513. The nonmoving party must produce evidence on any issue for which that party bears the burden at trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264; Celotex Corp. v. Catrett (1986), 477 U.S. 317, 322,106 S.Ct. 2548, 91 L.Ed.2d 265.
 {¶ 23} When ruling on a motion for summary judgment, the trial court may only review evidence properly submitted in accordance with Civ.R. 56(C). State ex rel. Boggs v. SpringfieldLocal School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 94, 97,647 N.E.2d 788. Civ.R. 56(C) prescribes the specific types of evidence to be considered in support of a motion for summary judgment, namely, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact," timely filed in the action.
 {¶ 24} A court should grant summary judgment with caution, resolving all doubts against the moving party. Osborne v. Lyles
(1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825. Summary judgment is appropriate if, after construing the evidence in a light most favorable to the opposing party, there exists no genuine issue of material fact and reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Stateex rel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467, 473,692 N.E.2d 198.
 The February 27, 2002 Board Meeting {¶ 25} The trial court held that the February 27, 2002, meeting violated both R.C. § 3313.16 and R.C. § 121.22(F). We will first consider the requirements of R.C. 3313.16, which states:
 {¶ 26} "A special meeting of a board of education may be called by the president or treasurer thereof or by any two members, by serving a written notice of the time and place of such meeting upon each member of the board at least two days prior to the date of such meeting. Such notice must be signed by the official or members calling the meeting. For the purpose of this section, service by mail is good service."
 {¶ 27} Appellants argue that actual notice of a special board meeting constitutes a waiver of the written notice requirement. Based on Appellee's failure to respond to Appellants' requests for admissions, and the trial court's refusal to allow Appellee to file late responses, Appellee has admitted he had actual notice of the February 27, 2002, board meeting, as well as notice of the meetings on March 8 and April 5, 2002.
 {¶ 28} The first case cited by Appellants in support of their argument is Indian Hill Exempted Village School Dist. Bd. of Edn.v. Hamilton Cty. Bd. of Edn. (1952), 64 Ohio Law Abs. 371, 108 N.E.2d 387. The Indian Hill court held that the written notice requirement of R.C. 3133.16 was waived because each of the five members of the board of education had actual notice, since they attended the meeting. Appellants also cite Cleveland City SchoolDist. v. Cleveland Teachers Union (1980), 68 Ohio App.2d 540,427 N.E.2d 540, which excused the written notice requirement because all board members were present at the meeting. Appellee argues that he did not attend the February 27, 2002, board meeting, rendering the holdings of these two cases inapplicable. Although the cases cited by Appellants support the general notion that the written notice provision in R.C. 3313.16 may be waived, Appellee is correct that they are not precisely on point with the facts of the instant case.
 {¶ 29} Appellants attempt to provide more general support for their argument by citing Edens v. Barberton Area Family PracticeCtr. (1989), 43 Ohio St.3d 176, 539 N.E.2d 1124. Appellants citeEdens for the proposition that actual notice controls over a general written notice provision in a statute. We do not interpret Edens in this fashion. The issue in dispute inEdens was whether written notice was effective when mailed or only when the notice was received. Id. at 180. The Edens court held that, when applying a statute that does not specify how a written notice should be given, the written notice is effective upon receipt and not upon the date of mailing. Id. This holding has no bearing on the instant case.
 {¶ 30} Thus, we are left with a general rule that written notice may be waived, and a defaulted admission on Appellee's part that he had actual knowledge of the February 27, 2002, special meeting. The significance of Appellee's actual notice in this situation is that it tends to show he was not prejudiced by the lack of written notice because he could have acted on his actual knowledge and attended the meeting. Errors which occur in administrative proceedings that are not prejudicial to the substantial rights of the parties do not constitute reversible error on appeal. See, e.g., Tongren v. Pub. Util. Comm. (1999),85 Ohio St.3d 87, 94, 706 N.E.2d 1255; Clayman v. State Med. Bd.of Ohio (1999), 133 Ohio App.3d 122, 128-129, 726 N.E.2d 1098. Appellee has not alleged and certainly not shown that he was prejudiced by the procedural failure to send written notice. There is further evidence in the record that Appellee could not attend the February 27th meeting, and that he would not be attending any meetings due to illness. All of these factors demonstrate that any error in failing to send Appellee a written notice was harmless as to the February 27, 2002, meeting.
 {¶ 31} The trial court also based its decision to grant summary judgment on a violation of a section of the Sunshine Law contained in R.C. 121.22(F), which states:
 {¶ 32} "(F) Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action. In the event of an emergency, the member or members calling the meeting shall notify the news media that have requested notification immediately of the time, place, and purpose of the meeting."
 {¶ 33} The purpose of the Sunshine Law is contained in R.C.121.22(A):
 {¶ 34} "(A) This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law."
 {¶ 35} According to R.C. 121.22(H), any resolution, rule or other formal action taken by a public body that does not conform to the requirements of R.C. 121.22, or that does not qualify as a valid exception to R.C. 121.22, is invalid.
 {¶ 36} There is no question that the Board is a "public body" subject to R.C. 121.22.
 {¶ 37} The dispute in this appeal is whether the February 27, 2002, meeting was a valid emergency meeting, and as such, was exempt from the requirement of notification of the news media 24 hours in advance. Appellants argue that R.C. 121.22 does not define "emergency," and they could find no Ohio caselaw that directly reviewed the issue at hand Appellee cites to a Seventh District case dealing with the rules for a public body to enter into an executive session, which is a distinct issue unrelated to the assignments of error here. See Staley v. St. Clair Twp. Bd.of Trustees (Dec. 15, 1987), 7th Dist. No. 87-C-44.
 {¶ 38} Appellants' detailed discussion of the Nebraska case of Meyer v. Bd. of Regents of the Univ. of Nebraska (1993),1 Neb. App. 893, 510 N.W.2d 450, is instructive. Meyer involved meetings held by the Board of Regents of the University of Nebraska dealing with the employment status of the president of the university, Dr. Ronald Roskens. The Board of Regents held meetings on May 12, June 23, and July 21, 1989, to discuss personnel matters involving Dr. Roskens. Id. at 894-895,510 N.W.2d 450. Dr. Roskens had stated both publicly and privately that he intended to resign. The Board of Regents was hoping for a definitive answer from Dr. Roskens concerning his tenure in office in the three weeks following July 22, 1989. Dr. Roskens was traveling to Japan and Minnesota during that time period. On July 31, just prior to his trip to Minnesota, he presented a proposal to the chairperson of the Board of Regents, and the chairperson decided to convene an emergency meeting to consider the proposal. Id. at 895-896, 510 N.W.2d 450. The Board of Regents held the emergency meetings, approved Dr. Roskens' proposal and hired an interim president. Mr. Dan Meyer filed an action against the Board of Regents based, in part, on the grounds that the July 31, 1989, session was not an emergency under Nebraska's open meeting laws. The trial court found no violation of the open meeting laws and the judgment was upheld on appeal.
 {¶ 39} Although there are many similarities between theMeyer case and the case sub judice, it would seem that the facts of the instant case present an even more compelling case that an emergency existed than in Meyer. In Meyer, the Board of Regents was under no statutory or specific deadline for resolving the employment status of Dr. Roskens. In the instant case, the Board was under a statutory deadline for deciding whether or not to renew the superintendent's contract. R.C. §3319.01. In Meyer, the Board of Regents met over a series of months before deciding that an emergency session was necessary. In the instant case, Board President Aronoff discovered the statutory requirement concerning the superintendent's employment situation only three weeks before the deadline. Furthermore, Board President Aronoff was not able to attend the originally scheduled meeting due to illness.
 {¶ 40} In the matter before us, the trial court concluded that the February 27, 2002, meeting was not an emergency because the subject matter of the meeting could have been handled at two previous board meetings. The trial court correctly attempted to determine the common usage for the undefined term "emergency" contained in R.C. 121.22(F). The process of judicial interpretation of a statute involves, "reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage." State ex rel. Portage LakesEdn. Assn., OEA/NEA v. State Emp. Relations Bd.,95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 36. A common dictionary definition of "emergency" is, "an unexpected situation or sudden occurrence of a serious and urgent nature that demands immediate attention." American Heritage Dictionary (2d College Ed. 1922) 448.
 {¶ 41} The trial court, though, went beyond this common definition and attempted to apply a concept of emergency comparable to that found in tort law, in which the sudden emergency defense is not available if the party asserting the defense is at fault in creating the emergency. Zehe v. Falkner
(1971), 26 Ohio St.2d 258, 263, 55 O.O.2d 489, 271 N.E.2d 276. Under this view, the Board could have theoretically resolved the issue of Mr. Lowe's contract any number of times prior to February 27, 2002. The Board, therefore, would have been at fault in creating their own emergency. We cannot approve of this interpretation by the trial court.
 {¶ 42} The only possible support for such a view may be found in the Eleventh District Court of Appeals case of Neuvirth v.Bd. of Trustees of Bainbridge Twp. (June 29, 1981), 11th Dist. No. 919. The entire discussion of this issue in Neuvirth takes up a mere two sentences:
 {¶ 43} "The court held the meeting[s] were not emergencies since there was evidence the matters could have been scheduled at any time in the preceding two or three months. The defendants could not postpone considering the matter until the last minute and then claim an emergency." Id. at *1.
 {¶ 44} The Neuvirth case gives no factual or analytical context for its conclusion, and we see no reason to rely onNeuvirth in reviewing the instant case.
 {¶ 45} We are concerned that the trial court's definition of emergency under R.C. § 121.22(F) would violate the doctrine of the separation of powers. "The principle of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government. State v. Warner (1990),55 Ohio St.3d 31, 43-44, 564 N.E.2d 18, 31. See State v. Harmon (1877),31 Ohio St. 250, 258. It is inherent in our theory of government `"that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved. * * *"' S.Euclid v. Jemison (1986), 28 Ohio St.3d 157, 159, 28 OBR 250, 252, 503 N.E.2d 136, 138, quoting Fairview v. Giffee (1905),73 Ohio St. 183, 187, 76 N.E. 865, 866." State v. Hochhausler
(1996), 76 Ohio St.3d 455, 463, 668 N.E.2d 457.
 {¶ 46} Under the trial court's interpretation, a court has the power to dictate to an executive branch agency that the agency cannot declare an emergency meeting if it was at all possible to accomplish the work of that emergency session at an earlier time. According to this view, it would be practically impossible to declare an emergency meeting that would be valid under R.C. 121.22(F), because almost every act can theoretically be performed at an earlier time. If we adopt this definition of emergency we would, in essence, be outlawing procrastination in all public offices and organizations. Although eradicating procrastination may be a noble goal, it is not a function of the courts to dictate to the other branches of government how they follow through with the work that is their public duty to accomplish. A school board, a city council, or a county board of commissioners must be the entity primarily responsible for determining its own emergencies. We are keenly aware that there may be situations in which a public body calls an emergency session as a pretext for avoiding public scrutiny of their actions. Nevertheless, we would be overstepping our judicial authority if we essentially eliminated the right of a school board, or any other public body, to rely on its own discretion in determining what is and what is not an emergency.
 {¶ 47} The parties are in agreement as to the facts. Board president Aronoff determined that the non-renewal of Mr. Lowe's contract was an emergency because of the fast approaching statutory deadline contained in R.C. 3319.01. Although she expected the Board to deal immediately with the matter of Mr. Lowe's contract, she was not there to pursue it personally. Aronoff only discovered the statutory deadline on or about February 9, 2002. Aronoff did not attend the first two board meetings that took place in February of 2002 because she was attending a seminar and subsequently became ill. She then called an emergency meeting for the only available day that a quorum could be convened. If these facts are true (and we must assume that they are for purposes of summary judgment) there was ample evidence in the record to show that the alleged emergency was not a pretext for avoiding public scrutiny of the subject matter of the February 27, 2002, board meeting.
 {¶ 48} Based on the analysis above, there were no material issues of fact in dispute concerning the application R.C. 121.22. Appellee submitted nothing to dispute Appellants' version of the facts and nowhere does he present evidence that Appellants' version was mere pretext. The trial court incorrectly applied the law regarding emergency meetings when it granted summary judgment to Appellee, as to the validity of the February 27, 2002 meeting. Because there are no material facts in dispute and Appellants were entitled to judgment as a matter of law, we sustain Appellants' first and third assignments of error with respect to the February 27, 2002, board meeting and grant summary judgment to Appellants.
 The March 8, 2002 Board Meeting {¶ 49} Appellants argue that the trial court granted summary judgment as to the March 8, 2002, special meeting on grounds that were not raised in Appellee's complaint or motion for summary judgment. The only argument raised by Appellee in support of his motion for summary judgment was that he was not given proper notice pursuant to R.C. 3313.16. We have already determined that Appellee had actual notice of the meeting, and that he did not assert or prove any prejudice to him from the lack of written notice. Appellee did not allege any other impropriety in the March 8, 2002, meeting, and therefore, the trial court erred in granting summary judgment to Appellee and in overruling Appellants' motion for summary judgment with respect to the March 8, 2002, meeting.
 The April 5, 2002 Board Meeting {¶ 50} Appellants point out that the only rationale that Appellee has set forth for invalidating the April 5, 2002, meeting was that the Board did not follow the proper procedure for entering into executive session. R.C. 121.22(G) governs the proper procedure and subject matter of an executive session under the Sunshine Law:
 {¶ 51} "(G) Except as provided in division (J) of this section, the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:
 {¶ 52} "(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, * * *"
 {¶ 53} Appellee has not pointed to any evidence that would indicate a violation of R.C. 121.22(G). In fact, Appellee's own evidence confirms the proper subject matter of the meeting, which was to consider the candidates for the new superintendent's position. (12/3/02 Motion for Summary Judgment, Attachment, Summary of Executive Session of April 5, 2002.) The burden of proof was on Appellee to provide evidence and point to those documents in the record, as permitted by Civ.R. 56(C), that demonstrated that there were no issues of material fact in dispute and that judgment should be granted as a matter of law. Appellee did not meet this burden, and it was inappropriate to grant summary judgment to Appellee with regard to the April 5, 2002, meeting.
 {¶ 54} Appellants, however, did present evidence that Appellee had written notice of the meeting, had actual knowledge of the meeting, that he attended the meeting, that the purpose of the meeting was to discuss candidates for the superintendent position, and that the news media was notified of the meeting more than 24 hours prior to the meeting. Appellee failed to rebut any of these facts in his response to Appellants' motion for summary judgment. The party opposing summary judgment has a burden to respond by referencing specific facts contained in the materials properly submitted for summary judgment pursuant to Civ.R. 56(C). Appellee did not meet this burden, and summary judgment should have been granted to Appellants with respect to the April 5, 2002, meeting, as well.
 {¶ 55} Based on our analysis above, we sustain Appellants' first three assignments of error.
 FOURTH ASSIGNMENT OF ERROR {¶ 56} "The Trial Court erred in awarding Appellee a civil forfeiture, and his costs and attorney fees."
 {¶ 57} The trial court ordered Appellants to pay a civil forfeiture of $500, to pay all court costs, and to pay $2,389.50 in attorney fees, all pursuant to R.C. 121.22(I)(2)(a). The following sections of R.C. 121.22(I) are relevant to this issue:
 {¶ 58} "(I)(1) Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation. Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions.
 {¶ 59} "(2)(a) If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all court costs and, subject to reduction as described in division (I)(2) of this section, reasonable attorney's fees. The court, in its discretion, may reduce an award of attorney's fees to the party that sought the injunction or not award attorney's fees to that party if the court determines both of the following:
 {¶ 60} "(i) That, based on the ordinary application of statutory law and case law as it existed at the time of violation or threatened violation that was the basis of the injunction, a well-informed public body reasonably would believe that the public body was not violating or threatening to violate this section;
 {¶ 61} "(ii) That a well-informed public body reasonably would believe that the conduct or threatened conduct that was the basis of the injunction would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct."
 {¶ 62} Because we are reversing the trial court's decision to grant summary judgment to Appellee on all issues related to R.C.121.22, we must also reverse the civil forfeiture, court costs and attorney fees awarded pursuant to R.C. § 121.22(I).
 CONCLUSION {¶ 63} Appellants have demonstrated that summary judgment was improperly granted to Appellee regarding the three board meeting dates that are under review. Appellants have also shown that summary judgment should have been granted in their favor with respect to these meetings. We reverse the summary judgment that was granted to Appellee, including the issuing of an injunction, with respect to the board meetings of February 27, 2002, March 8, 2002, and April 5, 2002. We also reverse the trial court's decision to overrule Appellants' motion for summary judgment concerning the meetings held on these dates and grant summary judgment in Appellants' favor as to these three meetings. The civil forfeiture, court costs and attorney fees assessed against Appellants are also reversed. None of the parties have challenged the trial court's ruling with respect to the May 13, 2002, board meeting, thus, this aspect of the decision remains valid.
Donofrio, J., concurs.
DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.