**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Carter v. Reese,* **Slip Opinion No. 2016-Ohio-5569.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2016-OHIO-5569**

**CARTER ET AL., APPELLANTS, *v.* REESE ET AL., APPELLEES.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Carter v. Reese,* Slip Opinion No. 2016-Ohio-5569.]**

*Tort law—Limitation on liability—"Good Samaritan" statute—R.C. 2305.23 applies to any person who administers emergency care at scene of emergency, not just health care professionals—"Administering emergency care" means giving medical and nonmedical care.*

(No. 2015-0108—Submitted January 5, 2016—Decided August 30, 2016.)

APPEAL from the Court of Appeals for Butler County,

No. CA2014-04-095, 2014-Ohio-5395.

_____

**SYLLABUS OF THE COURT**

1. Ohio's Good Samaritan statute applies to any person who administers emergency care or treatment at the scene of an emergency including but not limited to health care professionals.

2. The phrase "administering emergency care" as used in Ohio's Good Samaritan statute includes rendering medical and any other form of assistance to the safety and well-being of another when the result of an unforeseen combination of circumstances calls for immediate action.

_____

**O'DONNELL, J.**

{¶ 1} Dennis Carter and his wife, Mary, appeal from a judgment of the Twelfth District Court of Appeals that affirmed the trial court's grant of summary judgment in favor of Larry Reese Jr. in connection with an action they filed for injuries Carter sustained when Reese attempted to move a tractor-trailer that had pinned Carter's leg between the trailer and a loading dock.

{¶ 2} Ohio's Good Samaritan statute states:

> No person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency * * *, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct.

R.C. 2305.23.

{¶ 3} In this case, Carter told Reese to pull the tractor-trailer forward in order to free his leg, but when Reese attempted to do so, the truck rolled backward, resulting in serious injury to Carter.

{¶ 4} "Administering emergency care" is a broad phrase that includes rendering medical and any other form of assistance to the safety and well-being of another when the result of an unforeseen combination of circumstances calls for immediate action. Therefore, because Reese administered emergency care at the scene of the emergency and because the statute expressly states that no person shall be liable in civil damages for acts performed at the scene of such emergency, and

because no allegation of willful or wanton misconduct has been asserted against him, pursuant to Ohio's Good Samaritan statute, Reese is not liable in civil damages, and we affirm the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 5} On April 24, 2012, Carter, a truck driver for S&S Transport, Inc., pulled a tractor-trailer into the loading dock at AIC Contracting, Inc., in Fairfield, Ohio, to deliver an empty trailer and to pick up another. After attaching the second trailer, he pulled his truck about four to six inches away from the loading dock, unlocked the trailer brake, and locked the tractor brake so that the tractor wheels could not move. As he pulled himself onto the loading dock to close the trailer door, he slipped, and his leg became wedged between the loading dock and the trailer. Although he felt no physical pain at that time, he could not free himself and began to yell for help and bang on a loading dock door in an effort to get someone to help him.

{¶ 6} About ten minutes later, Reese heard Carter and drove to the AIC Contracting lot. Carter told him to "get in my truck, move it forward about a foot, * * * but whatever you do, don't put it in reverse." Reese responded, "[N]o problem."

{¶ 7} Reese climbed into the cab of the truck and put it in neutral before realizing that he did not know how to operate it. Carter recalled that Reese "revved up" the truck three times before he heard the air brake release, and within five seconds of that happening, the trailer rolled backwards and broke his leg.

{¶ 8} Paramedics arrived four minutes later, and someone moved the truck and freed Carter's leg. Due to the severity of the injuries, however, his right leg had to be amputated above the knee.

{¶ 9} Carter and his wife sued Reese but did not allege that he had engaged in willful or wanton misconduct. Reese asserted Ohio's Good Samaritan statute as

a defense and moved for summary judgment, and the trial court granted it pursuant to the statute.

{¶ 10} The court of appeals affirmed and held that R.C. 2305.23

applies to *any* person, health care professional or otherwise, who administers "emergency care," medical or otherwise, at the scene of an emergency and who meets the remaining requirements of the statute, e.g., their acts do not constitute willful or wanton misconduct.

(Emphasis sic.) 2014-Ohio-5395, ¶ 15. The court explained that an emergency situation exists when a man's leg is pinned between a truck and a loading dock, that Reese's actions in attempting to move the truck constituted emergency care because he was trying to resolve the emergency created by Carter, and further, that Reese did not commit willful or wanton misconduct.

{¶ 11} The Carters appealed and we accepted the following proposition of law for review:

The trial court committed reversible error in granting Appellees' motion for summary judgment, and the court of appeals committed error in affirming the judgment, because the protection afforded under the Ohio Good Samaritan statute, R.C. 2305.23, is limited in scope and application to health care responders providing emergency medical care or treatment to another individual at the scene of an emergency and who otherwise satisfy the statute.

4

**The Parties to the Appeal**

{¶ 12} On appeal to this court, the Carters urge that R.C. 2305.23 provides immunity from civil liability only for health care professionals and trained first responders who voluntarily administer emergency *medical* care and treatment to injured persons at the scene of an emergency and that it is for the General Assembly to amend R.C. 2305.23 if it intends for the statute to immunize any person who voluntarily administers emergency nonmedical care or treatment. In support of their position, they point to language in the statute excluding coverage for emergency care or treatment that is administered in a hospital, doctor's office, or other place having proper medical equipment or for care rendered with the expectation of remuneration and language regarding law enforcement officers and fire fighters acting as part of their duties. The Carters also note that this court stated in footnote five in *Primes v. Tyler*, 43 Ohio St.2d 195, 205, 331 N.E.2d 723 (1975), that R.C. 2305.23 applies to those who render *medical* treatment, and that appellate courts have followed *Primes*, and they assert that the General Assembly is presumed to know the decisions of this court, but it has not amended the Good Samaritan statute. They also assert that the lower courts' interpretation of R.C. 2305.23 emasculates the common law rule that Good Samaritans have a duty to exercise reasonable care. They finally contend that Reese did not administer any emergency care or treatment when he attempted to move the truck.

{¶ 13} Reese argues that R.C. 2305.23 applies to any person, regardless of profession, and that the legislature could have used the phrase "health care professionals" if it had intended the statute to protect only those individuals. Reese contends that limiting R.C. 2305.23 to those rendering emergency *medical* care or treatment would require this court to add the word "medical" to the statute and asserts the appellate court correctly determined he provided emergency *care* in attempting to free Carter's leg and therefore he is protected by R.C. 2305.23. Notably, Reese does not claim that he provided emergency *treatment*.

**Issues on Appeal**

{¶ 14} This case presents our court with two separate questions involving the legislative intent behind Ohio's Good Samaritan statute.

{¶ 15} First, what did the General Assembly intend by using the phrase "no person shall be liable in civil damages"—did it intend to include only health care professionals who administer emergency care or treatment at the scene of an emergency, or, more broadly, to include *any person* who administers emergency care or treatment at the scene of an emergency?

{¶ 16} Second, what did the General Assembly intend by using the phrase "administering emergency care"—did it intend to limit emergency care to only the administration of *medical* care, or, did it intend to include all forms of care administered at the scene of an emergency?

{¶ 17} Our interpretation of Ohio's Good Samaritan statute and resolution of these questions present matters of first impression in our court. Other jurisdictions, however, have considered similar questions in connection with their respective Good Samaritan statutes, and their decisions are instructive in resolving these questions.

**Historical Perspective**

*Common Law*

{¶ 18} The common law in Ohio is that a bystander has no affirmative duty to aid or protect another absent a special relationship justifying the imposition of a duty. *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 293, 673 N.E.2d 1311 (1997), citing 2 Restatement of the Law 2d, Torts, Sections 314-319, at 116-130 (1965); *see also Gelbman v. Second Natl. Bank of Warren*, 9 Ohio St.3d 77, 79, 458 N.E.2d 1262 (1984). However, one who voluntarily and gratuitously renders services to another for the protection of the other person is liable at common law for injuries resulting from his failure to exercise reasonable care under the circumstances. *See* 2 Restatement of the Law 2d, Torts, Section 323

(1965); Keeton, Dobbs, Keeton & Owen, *Prosser & Keeton on Law of Torts*, Section 56, 378 (5th Ed.1984).

*Good Samaritan Statutes*

**{¶ 19}** In 1959, California enacted the nation's first Good Samaritan statute, which provided that no physician or podiatrist, "who in good faith renders emergency care at the scene of the emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care." Cal.Bus. & Prof.Code 2144, enacted 1959, now codified as Cal.Bus. & Prof.Code 2395. *See generally* Brandt, *Good Samaritan Laws – The Legal Placebo: A Current Analysis*, 17 Akron L.Rev. 303, 305 (1983), fn. 23. Commentators have explained that California's legislature sought to encourage physicians to provide emergency treatment to injured persons in emergency situations without fear of liability for malpractice. *See* 17 Akron L.Rev. at 306, 332; *see also* Waisman, *Negligence, Responsibility, and the Clumsy Samaritan: Is there a Fairness Rationale for the Good Samaritan Immunity?*, 29 Ga.St.U.L.Rev. 609, 628-630 (2013).

**{¶ 20}** Since that time, every state has enacted some version of Good Samaritan legislation. *Id.* at 631; *see also* Annotation, *Construction and Application of "Good Samaritan" Statutes*, 68 A.L.R. 4th 294, 300 (1989). These statutes generally fall into three categories—those that specifically include by reference only medically trained persons; those that apply to the rendition of medical aid by any person; and those that more broadly apply to any person rendering emergency care, treatment, or other kinds of assistance without expressly requiring that such actions be medical in nature.

*I. Only Medically Trained Persons*

**{¶ 21}** Five states have Good Samaritan statutes that, with certain exceptions, expressly exclude only medically trained persons from liability for civil damages. *See* Conn.Gen.Stat.Ann. 52-557b(a) ("*A person licensed to practice*

*medicine and surgery * * * or dentistry * * *, a person licensed as a registered nurse * * * or certified as a licensed practical nurse * * *, a medical technician or any person operating a cardiopulmonary resuscitator or a person trained in cardiopulmonary resuscitation * * * or a person operating an automatic external defibrillator*, who * * * renders emergency medical or professional assistance to a person in need thereof, shall not be liable to such person assisted for civil damages * * *"); Ill.Comp.Stat.Ann. Chapter 745, 49/25 ("*Any person licensed under the Medical Practice Act of 1987 or any person licensed to practice the treatment of human ailments in any other state * * ** who, in good faith, provides emergency care * * * shall not * * * be liable for civil damages * * *"); Ky.Rev.Stat.Ann. 411.148(1) ("*No physician * * *, registered or practical nurse * * *, person certified as an emergency medical technician * * *, person certified * * * to perform cardiopulmonary resuscitation, or employee of any board of education * * * who has completed a course in first aid and who maintains current certification * * ** shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency * * *"); Mich.Comp.Laws Ann. 691.1501(1) ("*A physician, physician's assistant, registered professional nurse, licensed practical nurse, or licensed EMS provider* who in good faith renders emergency care * * * is not liable for civil damages * * *"); Mo.Stat.Ann. 537.037.1(1) ("*Any physician or surgeon, registered professional nurse or licensed practical nurse * * ** and *any person licensed as a mobile emergency medical technician * * ** may * * * render emergency care or assistance * * * at the scene of an emergency * * *, and shall not be liable for any civil damages * * *"). (Emphases added.)

*II. Any Person Rendering Medical Assistance*

{¶ 22} Four states have Good Samaritan statutes that apply to any person but expressly limit protection from liability to the rendering of medical aid through use of terms such as "first aid," "medical attention," and "health care treatment." *See* Idaho Code Ann. 5-330 ("That no action shall lie or be maintained for civil

damages * * * *against any person* * * who * * *, being at, or stopping at the scene of an accident, offers and administers *first aid* or *medical attention* * * *); N.C.Gen.Stat.Ann. 90-21.14(a) ("*Any person* * * * who * * * renders *first aid or emergency health care treatment* to a person who is unconscious, ill or injured * * * shall not be liable for damages * * *"); Okla.Stat.Ann., Title 76, 5(a)(2) ("*any person* who * * * renders or attempts to render *emergency care consisting of artificial respiration, restoration of breathing, or preventing or retarding the loss of blood, or aiding or restoring heart action or circulation of blood* to the victim or victims of an accident or emergency * * * shall not be liable for any civil damages"); Or.Rev.Stat.Ann. 30.800(2) ("No person may maintain an action for damages for injury, death or loss that results from acts or omissions of *a person* while rendering *emergency medical assistance* * * *"). (Emphases added.)

III. *Anyone Rendering Emergency Care, Treatment, or Other Assistance*

{¶ 23} The remaining states have Good Samaritan statutes that broadly apply to any person who renders emergency care, treatment, or other kinds of assistance without an express requirement that those acts be medical in nature. *See* Ala.Code 6-5-332(g) ("*Any person*, who * * * *renders emergency care* at the scene of an accident or emergency * * * shall not be liable for any civil damages * * *"); Alaska Stat.Ann. 09.65.090(a) ("*A person* * * * who *renders emergency care or emergency counseling* * * * is not liable for civil damages * * *"); Ariz.Rev.Stat.Ann. 32-1471 ("Any health care provider * * * or *any other person* who *renders emergency care* at a public gathering or at the scene of an emergency occurrence * * * shall not be liable for any civil or other damages * * *"); Ark.Code Ann. 17-95-101(b) ("*Any person who is not a health care professional* who is present at an emergency or accident scene and who * * * [p]roceeds to lend *emergency assistance or service* * * * shall not be held liable in civil damages * * *") (subdivision (a) of the statute covers health care professionals); Cal.Health & Safety Code 1799.102(b)(2) ("*no person* who * * * renders *emergency medical*

*or nonmedical care or assistance* at the scene of an emergency shall be liable for civil damages * * *"); Colo.Rev.Stat.Ann. 13-21-108(1) ("Any person licensed as a physician and surgeon * * * or *any other person*, who * * * renders *emergency care or emergency assistance* * * * at the place of an emergency or accident * * * shall not be liable for any civil damages * * *"); Del.Code Ann., Title 16, 6801(a) ("*any person* who * * * renders first aid, *emergency treatment or rescue assistance* * * * shall not be liable for damages * * *"); Fla.Stat.Ann. 768.13(2)(a) ("*Any person* * * * who * * * renders *emergency care or treatment* * * * in direct response to emergency situations * * * shall not be held liable for any civil damages * * *"); Ga.Code Ann. 51-1-29(a) ("*Any person* * * * who * * * *renders emergency care* at the scene of an accident or emergency * * * shall not be liable for any civil damages * * *"); Haw.Rev.Stat.Ann. 663-1.5(a) ("*Any person* who * * * *renders emergency care* * * * at the scene of an accident or emergency * * * shall not be liable for any civil damages * * *"); Ind.Ann.Code 34-30-12-1(b) ("*a person* who * * * *renders emergency care* at the scene of the emergency or accident is immune from civil liability * * *"); Iowa Code Ann. 613.17(1) ("*A person, who* * * * *renders emergency care or assistance* * * * shall not be liable for any civil damages * * *"); Kan.Stat.Ann. 65-2891b ("*Any person who is not a health care provider* * * * who * * * renders *emergency care or assistance* * * * at the scene of an emergency or accident shall not be liable for any civil damages * * *") (Kan.Stat.Ann. 65-2891 contains a similar provision for health care providers); La.Stat.Ann., Title 9, 2793(A) ("*No person* who * * * renders *emergency care,* first aid *or rescue* at the scene of an emergency * * * shall be liable for any civil damages * * *"); Me.Rev.Stat.Ann., Title 14, 164 ("*any person* who * * * renders first aid, *emergency treatment or rescue assistance* * * * shall not be liable for damages * * *"); Md.Code Ann., Courts & Judicial Proceedings, 5-603(c) ("*An individual* * * * is not civilly liable for any act or omission in providing *assistance* or medical aid * * *"); Mass.Gen.Laws Ann., Chapter 112, 12V ("*Any person* who * * *

attempts to render *emergency care* * * * shall not be liable * * *"); Minn.Stat.Ann. 604A.01(2)(a) ("*A person* who * * * renders *emergency care, advice, or assistance* at the scene of an emergency * * * is not liable for any civil damages * * *"); Miss.Code Ann. 73-25-37(1) ("No duly licensed, practicing physician, physician assistant, dentist, * * * *or any other person* who * * * *renders emergency care* to any injured person at the scene of an emergency * * * shall be liable for any civil damages * * *"); Mont.Code Ann. 27-1-714(1) ("Any person licensed as a physician and surgeon * * * *or any other person who* * * * *renders emergency care or assistance* * * * at the scene of an emergency or accident is not liable for any civil damages * * *"); Neb.Rev.Stat.Ann. 25-21,186 ("*No person* who renders *emergency care* at the scene of an accident or other emergency * * * shall be held liable for any civil damages * * *"); Nev.Rev.Stat.Ann. 41.500(1) ("*any person* * * * who *renders emergency care or assistance* in an emergency * * * is not liable for any civil damages * * *"); N.H.Rev.Stat.Ann. 508:12(1) ("If *any person* * * * *renders emergency care* at the place of the happening of an emergency * * * the person who renders the care is not liable in civil damages * * *"); N.J.Stat.Ann. 2A:62A-1 ("*Any individual* * * * who * * * *renders emergency care* at the scene of an accident or emergency * * * shall not be liable for any civil damages * * *"); N.M.Stat.Ann. 24-10-3 ("*No person* who comes to the *aid or rescue* of another person by *providing care or assistance* * * * at or near the scene of an emergency * * * shall be held liable for any civil damages * * *"); N.Y.Public Health Law 3000-a(1) ("*any person* who * * * renders first aid *or emergency treatment* at the scene of an accident * * * shall not be liable for damages * * *"); N.D.Code Ann. 32-03.1-02 ("*No person* * * * who *renders aid or assistance necessary or helpful in the circumstances* * * * may be named as a defendant or held liable in any personal injury civil action * * *"); 42 Pa.Cons.Stat. 8332(a) ("*Any person* * * * who * * * *renders emergency care, treatment*, first aid, *or rescue* at the scene of an emergency * * * shall not be liable for any civil damages * * *"); R.I.Gen.Laws

Ann. 9-1-27.1 ("*No person* who * * * *renders emergency assistance* * * * shall be liable for civil damages * * *"); S.C.Code Ann. 15-1-310 ("*Any person*, who * * * *renders emergency care* at the scene of an accident or emergency * * * shall not be liable for any civil damages * * *"); S.D.Codified Laws 20-9-4.1 ("No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, *or any other person* is liable * * * in the course of their rendering in good faith, *any emergency care and services* during an emergency * * *"); Tenn.Code Ann. 63-6-218(b) ("*Any person* * * * shall not be liable to victims or persons receiving *emergency care* for any civil damages as a result of any act or omission by such person *in rendering the emergency care* * * *"); Tex.Civ.Practice & Remedies Code Ann. 74.151(a) ("*A person* who * * * *administers emergency care* is not liable in civil damages for an act performed during the emergency * * *"); Utah Code Ann. 78B-4-501(1) ("*A person* who *renders emergency care* at or near the scene of, or during an emergency * * * is not liable for any civil damages * * *"); Vt.Stat.Ann., Title 12, 519(b) ("A person who provides *reasonable assistance* [to a person "exposed to grave physical harm"] shall not be liable in civil damages * * *"); Va.Code Ann. 8.01-225(A)(1) ("*Any person* who * * * *renders emergency care or assistance* * * * at the scene of an accident, fire, or any life-threatening emergency * * * shall not be liable for any civil damages * * *"); Wash.Rev.Code Ann. 4.24.300(1) ("*Any person*, * * * who * * * *renders emergency care* at the scene of an emergency or *who participates in transporting* * * * therefrom an injured person * * * for emergency medical treatment shall not be liable for civil damages * * *"); W.Va.Code Ann. 55-7-15 ("*No person* * * * who * * * *renders emergency care* at the scene of an accident * * * shall be liable for any civil damages * * *"); Wisc.Stat.Ann. 895.48(1) ("*any person* who *renders emergency care* at the scene of an emergency or accident * * * shall be immune from civil liability"); Wyo.Stat.Ann. 1-1-120(a) ("Any person licensed as a

physician and surgeon * * * *or any other person*, who * * * *renders emergency care or assistance* * * * at the place of an emergency or accident, is not liable for any civil damages * * *"). (Emphases added.)

**Law and Analysis**

*Ohio's Good Samaritan Statute*

{¶ 24} R.C. 2305.23 provides:

> No person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency outside of a hospital, doctor's office, or other place having proper medical equipment, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct.
>
> Nothing in this section applies to the administering of such care or treatment where the same is rendered for remuneration, or with the expectation of remuneration, from the recipient of such care or treatment or someone on his behalf. The administering of such care or treatment by one as a part of his duties as a paid member of any organization of law enforcement officers or fire fighters does not cause such to be a rendering for remuneration or expectation of remuneration.

{¶ 25} Regarding the first question—whether R.C. 2305.23 applies only to health care professionals—the statute expressly states, "*No person* shall be liable in civil damages * * *." (Emphasis added.) If the legislature had intended that this statute apply only to health care professionals, it could have expressed its intent by using a more limiting phrase such as "*no health care professional* shall be liable in civil damages" or by naming the categories of individuals it intended to exclude from liability, e.g., physicians or nurses. And Ohio's General Assembly knows

how to express its intent in this regard because in R.C. 2305.231, the statute immediately following R.C. 2305.23, it stated:

> (B) *No physician* who volunteers the physician's services as a team physician or team podiatrist to a school's athletics program, *no dentist* who volunteers the dentist's services as a team dentist to a school's athletics program, and *no registered nurse* who volunteers the registered nurse's services as a team nurse to a school's athletics program *is liable in damages in a civil action* for administering emergency medical care, emergency dental care, other emergency professional care, or first aid treatment to a participant in an athletic event involving the school, at the scene of the event * * * , or for acts performed in administering the care or treatment, unless the acts of the physician, dentist, or registered nurse constitute willful or wanton misconduct.

(Emphasis added.)

{¶ 26} Obviously, the General Assembly did not similarly limit the scope of Ohio's Good Samaritan statute; rather, by stating that *no person* shall be liable in civil damages, it expressed its intent that the statute apply to anyone who otherwise meets the statutory requirements. *Compare Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 25 (by using the phrase "[n]o person shall operate a motor vehicle" in R.C. 4511.21(A), the General Assembly "extends [the statute's] application to the citizens of the state generally and does not single out any group or class for different treatment"). Thus, Ohio joins the majority of states that extend application of their Good Samaritan legislation to all persons and not only to those in the health care profession.

14

**{¶ 27}** We recognize that the title of the act containing the original version of Ohio's Good Samaritan statute states its purpose: "To enact section 2305.23 of the Revised Code, relative to the liability of physicians and nurses for emergency treatment." Am.Sub.S.B. No. 14, 130 Ohio Laws, 1424. However, while the title of an act is sometimes helpful in arriving at legislative intent, it is not dispositive. *Columbus Bldg. & Constr. Trades Council v. Moyer*, 163 Ohio St. 189, 200, 126 N.E.2d 429 (1955). "The title of an act is never employed to defeat the clear intent of the Legislature." *Wachendorf v. Shaver*, 149 Ohio St. 231, 243, 78 N.E.2d 370 (1948).

**{¶ 28}** Ohio's Good Samaritan statute applies to any person who administers emergency care or treatment at the scene of an emergency including but not limited to health care professionals.

**{¶ 29}** Regarding the second question—whether the phrase "administering emergency care" is limited to medical attention or more broadly includes other forms of assistance—because the legislature did not define any of these terms in R.C. 2305.23, we "look to the plain and ordinary meaning of the words." *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 17.

**{¶ 30}** The term "administer" means, inter alia, "[f]urnish, supply, give." 1 *Shorter Oxford English Dictionary* 28 (5th Ed.2002). *See also Webster's Third New International Dictionary* 27 (1986) (definition of "administer" includes "to mete out").

**{¶ 31}** An "emergency" is "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Id.* at 741. *See also* 1 *Shorter Oxford* at 814 (an emergency is "[a] situation, esp. of danger or conflict, that arises unexpectedly and requires urgent action"); Utah Code Ann. 78B-4-501(1) (for purposes of Utah's Good Samaritan statute, emergency "means an unexpected occurrence involving injury, threat of injury, or illness to a person or the public, including motor vehicle accidents, disasters, actual or threatened discharges,

removal, or disposal of hazardous materials, and other accidents or events of a similar nature").

{¶ 32} The separate opinion concurring in part and dissenting in part objects to the definition of an "emergency" including the phrase "an unforeseen combination of circumstances." The concurring and dissenting opinion notes that some injuries are "wholly foreseeable, but nonetheless, they require immediate, urgent care," concurring and dissenting opinion at ¶ 51, and "would not limit an 'emergency' for purposes of R.C. 2305.23 to those that are unforeseeable," *id.* at ¶ 61. It uses the terms "unforeseen" and "unforeseeable" as if they are interchangeable. They are not.

{¶ 33} "Unforeseen" means unexpected—a term used in several definitions of an "emergency" relied upon by the concurring and dissenting opinion. *Webster's* at 2496. In contrast, "unforeseeable" means "incapable of being foreseen, foretold, or anticipated." *Id.* A combination of circumstances may be unforeseen or unexpected by the individuals experiencing them even though those circumstances were capable of being foreseen.

{¶ 34} "Care" includes "responsibility for or attention to safety and well-being." *Webster's* at 338. *See also* 1 *Shorter Oxford* at 345 ("care" includes "[s]erious attention"); *Willingham v. Hudson*, 274 Ga.App. 200, 204, 617 S.E.2d 192 (2005), quoting *Anderson v. Little & Davenport Funeral Home*, 242 Ga. 751, 753, 251 S.E.2d 250 (1978) (applying definition of "emergency care" used by the Georgia Supreme Court in a "similar statutory context," i.e., " 'the performance of necessary personal services during an unforeseen circumstance that calls for immediate action' "); Utah Code Ann. 78B-4-501(1) (stating that for purposes of Utah's Good Samaritan statute, emergency care "includes actual assistance or advice offered to avoid, mitigate, or attempt to mitigate the effects of an emergency").

**{¶ 35}** To construe the phrase "administering emergency care" to mean only emergency *medical* care would require this court to add a descriptive adjective to the statute. Notably, in *Van Horn v. Watson*, 45 Cal.4th 322, 325-326, 331, 86 Cal.Rptr.3d 350, 197 P.3d 164 (2008), that is what the Supreme Court of California did when it determined that the phrase "emergency care" in that state's Good Samaritan statute meant emergency *medical* care at the scene of a *medical* emergency, despite the fact that the legislature had not used that limiting adjective. The California legislature amended the statute the following year to clarify that emergency care meant "emergency medical *or nonmedical care*." (Emphasis added.) Cal. Health and Safety Code 1799.102(b)(2).

**{¶ 36}** Similarly, the Ohio General Assembly used the phrase "emergency care," not "emergency *medical* care," and therefore, its intent is more expansive and includes both medical and nonmedical emergency care.

**{¶ 37}** We recognize that footnote five in *Primes*, 43 Ohio St.2d at 201, 331 N.E.2d 723, states that R.C. 2305.23 "singles out a group of benevolently-disposed individuals for immunity from negligent injury to persons while rendering *medical* treatment during the exigencies of an emergency." (Emphasis added.) In that case, however, we determined only that R.C. 4515.02, Ohio's guest statute, was unconstitutional and did not address the scope or application of the Good Samaritan statute.

**{¶ 38}** Thus, the phrase "administering emergency care" as used in Ohio's Good Samaritan statute includes rendering medical and any other form of assistance to the safety and well-being of another when the result of an unforeseen combination of circumstances calls for immediate action. *Compare Wallace v. Hall*, 145 Ga.App. 610, 610-611, 244 S.E.2d 129 (1978) (holding that a former version of Georgia's Good Samaritan statute, which is similar to the current version and protected "[a]ny person" who "in good faith renders emergency care at the scene of an accident or emergency," applied to a homeowner who, when a

repairman was injured in a fall at her house, aggravated his injuries by transporting him home); *Held v. Rocky River*, 34 Ohio App.3d 35, 38-39, 516 N.E.2d 1272 (8th Dist.1986) (holding that an off duty firefighter rendered emergency care for purposes of R.C. 2305.23 in moving another firefighter who was lying unconscious under a stream of rushing water).

{¶ 39} A careful reading of R.C. 2305.23 reveals that the statute contains two significant prepositional phrases: "No person shall be liable in civil damages [1] for administering emergency care or treatment at the scene of an emergency * * * [2] for acts performed at the scene of such emergency * * *." When a court interprets the meaning of a statute, it "must give effect to all of the statute's words." *Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, — N.E.3d —, ¶ 9. The latter prepositional phrase in R.C. 2305.23 precludes liability for any acts performed at the scene of an emergency and further supports the conclusion that the General Assembly intended for the phrase "administering emergency care" to broadly include nonmedical care. In this regard, Ohio's statute is similar to statutes of other states that broadly apply to any type of assistance given at the scene of an emergency. *Compare* Ark.Code Ann. 17-95-101(b) (protecting anyone who lends "emergency assistance or service"); Iowa Code Ann. 613.17(1) (protecting anyone who renders "emergency care or assistance").

{¶ 40} The uncontested facts in this case show that Reese performed acts at the scene of an emergency that constituted administering "emergency care" to Carter. Carter slipped, his leg became wedged between a loading dock and a trailer, and he could not free himself from a situation that resulted from an unforeseen combination of circumstances, called for immediate action, and thus constituted an "emergency" for purposes of R.C. 2305.23. In responding, Reese administered care and performed an act at the scene of the emergency by attempting to move the truck in an effort to free Carter's leg, and there is no allegation that his conduct was

willful or wanton. Accordingly, R.C. 2305.23 applies to Reese, and he is not liable in civil damages to the Carters.

**Conclusion**

{¶ 41} Ohio's Good Samaritan statute applies to any person who administers emergency care or treatment at the scene of an emergency including but not limited to health care professionals. Moreover, the phrase "administering emergency care" in the statute is not limited to medical acts and includes rendering medical and any other form of assistance to the safety and well-being of another when the result of an unforeseen combination of circumstances calls for immediate action. Because Reese performed acts at the scene of an emergency in administering emergency care to Reese and there is no allegation of willful or wanton misconduct, pursuant to R.C. 2305.23, he is not liable in civil damages. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., dissents, with an opinion joined by LANZINGER, J.

PFEIFER, J., dissents, with an opinion.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 42} I agree with the majority's holding that R.C. 2305.23 applies to any person who administers emergency care or treatment. But I dissent from the remainder of the opinion and syllabus, including the majority's holding that an "emergency" for purposes of R.C. 2305.23 requires "an unforeseen combination of circumstances," and its affirmation of the use of summary judgment to determine the applicability of the statute to the facts of this case.

{¶ 43} I would hold that the definition of an "emergency" includes sudden events or circumstances that require urgent or immediate attention or action, regardless of whether the events were foreseeable. And I would hold that questions

about the application of R.C. 2305.23 to the facts presented in a given case are typically a question of fact for the jury or other fact-finder.

## ANALYSIS

### Emergencies are not limited to unforeseeable circumstances and foreseeability is irrelevant for purposes of R.C. 2305.23

**{¶ 44}** The portion of Ohio's Good Samaritan statute that is relevant to this appeal states: "No person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency * * *, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct." R.C. 2305.23.

**{¶ 45}** "There is no definition of 'emergency medical care or treatment' in the Revised Code." *Campbell v. Colley*, 113 Ohio App.3d 14, 19, 680 N.E.2d 201 (4th Dist.1996). When a statute does not define a term, courts are to give the term its usual, normal, or customary meaning. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 12; R.C. 1.42. "The process of judicial interpretation of a statute involves, 'reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage.' " *Wolf v. E. Liverpool School Dist. Bd. of Edn.*, 7th Dist. Columbiana No. 03 CO 5, 2004-Ohio-2479, ¶ 40, quoting *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.,* 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 36.

**{¶ 46}** Here, the majority defines "administering emergency care" according to the definitions of "emergency" found in some dictionaries. *See, e.g.,* Majority opinion at ¶ 31. The majority adopts those definitions, which include the legal concept of foreseeability, and then sets forth a definition of "administering emergency care" as "rendering medical and any other form of assistance to the safety and well-being of another when the result of *an unforeseen combination of circumstances* calls for immediate action." (Emphasis added.) Majority opinion,

at paragraph two of the syllabus. But the majority is not mindful that while determining legislative intent primarily involves an analysis of the statutory language, it is also necessary to consider the legislature's purpose in enacting the law. *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20, quoting *State ex rel. Watkins v. Eighth Dist. Court of Appeals*, 82 Ohio St.3d 532, 535, 696 N.E.2d 1079 (1998).

{¶ 47} With that purpose in mind, I would not limit the statutory term "emergency care" to an unforeseen combination of circumstances. Several reasons support a definition of "emergency" that does not incorporate the concept of foreseeability.

*The urgency of a situation, not its foreseeability, is critical to defining an emergency in a manner consistent with purpose of the statute*

{¶ 48} First, we must be cognizant that the purpose of the statute is to promote the public policy of encouraging the rendering of aid to those in dire circumstances. *See Primes v. Tyler*, 43 Ohio St.2d 195, 201, 331 N.E.2d 723 (1975), fn. 5 (describing R.C. 2305.23's immunity as an effort "to further a legitimate legislative objective of providing emergency medical assistance to injured persons where delay might result in death or great bodily injury"). The majority correctly holds that the statute is intended to shield all those who give aid or assistance, and not to limit the protections of the statute to people with medical education, training, and experience. *See* majority opinion, at paragraph one of the syllabus.

{¶ 49} But given the broad scope of the statute and its intent to shield well-intended individuals from liability for rendering aid, it is unlikely that the General Assembly intended to incorporate a legal concept (foreseeability) into the definition of emergency because the average person is unlikely to have a sufficient understanding of the legal aspects of foreseeability. Rather, it is more likely that

the legislative intent was to rely on commonly used and understood words, like "sudden," "unexpected," "urgent," and "immediate," to define an emergency.

{¶ 50} Requiring that the circumstances giving rise to the "emergency" be unforeseeable is not reflective of the legislative intent. And the incorporation of foreseeability into the understanding of an "emergency" could lead to both confusion in Ohio's bench and bar as well as its ball parks.

{¶ 51} Consider a high school's varsity football team playing on a Friday night in autumn. As those who attend games often see, high schools across Ohio retain ambulances for football games because players and spectators can sustain serious injuries during the game. Indeed, it is now widely understood that players can suffer concussions during games. Lueke, *High School Athletes and Concussions*, 32 J.Leg.Med. 483, 485, 501 (2011) (noting that "[c]oncussions are inevitable in high school sports" and that there are 300,000 sports-related concussions each year in the United States, that concussions are twice as likely to occur during games than in practice, and that the majority of concussions in high school athletics occur while students play football, soccer, and basketball). Those injuries are thus wholly foreseeable, but nonetheless, they require immediate, urgent care. *Id*. at 489-490 (allowing a player with a concussion to return to the field can lead to long-term neuropsychological dysfunction, severe disability, and death). Under the majority's definition, a concussion at a football game might not qualify as an "emergency."

{¶ 52} Similarly, we expect that there will be lifeguards on duty at public swimming pools. And the presence of lifeguards signifies the presence of potential emergencies, including drowning and injuries sustained from diving. In other words, injuries and life-threatening conditions are foreseeable at water parks and pools, and those injuries and conditions require immediate action.

{¶ 53} In construing Ohio's Good Samaritan statute, we must be mindful that the salient inquiry in cases involving R.C. 2305.23 and other "emergencies" is

the urgency of the situation, not the foreseeability of it. When "[l]ife or wholeness of body may be in the balance," we should not radically narrow the definition of emergency. *Mary Day Nursery, Children's Hosp. v. Akron,* 90 Ohio Law Abs. 457, 189 N.E.2d 745, 750 (C.P.1961).

**{¶ 54}** "Within the [Good Samaritan] Act's intended meaning an emergency occurs whenever a stranger appears (or may be perceived) to be ill or in need of succor." (Emphasis deleted.) *Jackson v. Mercy Health Ctr., Inc.,* 1993 OK 155, 864 P.2d 839, 845. "[L]imited and technical definitions given to the concepts of 'emergency' and 'emergency care' frustrate the purpose of Good Samaritan legislation," *McDowell v. Gillie*, 2001 ND 91, 626 N.W.2d 666, ¶ 18, and should be avoided. This is particularly true given the intent of Good Samaritan laws, which is to abrogate the common-law rescue doctrine and to encourage people to risk helping strangers in need of emergency assistance without fear of liability, even when they have no duty to render aid. "Generally, a bystander has no duty to provide affirmative aid to an injured person, even if the bystander has the ability to help." *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1178 (3d Cir.1994), citing Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts,* Section 56, at 375 (5th Ed.1984); *McDowell* at ¶ 6 ("In an attempt to eliminate the perceived inadequacies of the common law rules, all states have enacted some form of Good Samaritan legislation to protect individuals from civil liability for any negligent acts or omissions committed while voluntarily providing emergency aid or assistance").

**{¶ 55}** But under the majority's definition of an emergency, the foreseeable nature of injuries, including those at football games and swimming pools, renders them outside the scope of R.C. 2305.23's protections. It is inconceivable that the General Assembly intended such a result. And if such a limitation was desired, the legislature could have incorporated it into the statute. It is the legislature's province

to do so; I would not limit the term "emergency" in R.C. 2305.23 by judicial fiat.[1]
*Colbert,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781.

> *To the extent that dictionaries have utility in defining "emergency," we should look to those definitions that existed when the General Assembly enacted R.C. 2305.23*

**{¶ 56}** Second, to the extent that dictionary definitions of "emergency" are illustrative of the legislative intent, we must be mindful that a judge or justice often has several versions of a definition from which to choose. While the majority correctly cites certain definitions of which it approves, other dictionaries define the term "emergency" differently.[2] Thus, we should rely on dictionary definitions that were contemporaneous with the passage of R.C. 2305.23 in 1977 and that a legislator could have consulted.

---

[1] The preferred practice is for a legislature to define the terms in its statutes, including Good Samaritan acts. But given that the word "emergency" is well known in common parlance, it seems likely that the General Assembly intended it to carry the same broad meaning in R.C. 2305.23. And if it so chooses, the General Assembly can respond to the court's interpretation of "emergency" in this case by amendment that makes clear its intent. Indeed, after the California Supreme Court interpreted California's Good Samaritan law to grant immunity only to persons who render emergency *medical* care and not to persons who render emergency *nonmedical* care, *Van Horn v. Watson*, 45 Cal.4th 322, 86 Cal.Rptr.3d 350, 197 P.3d 164 (2008), the California Legislature amended the statute (Cal.Health & Safety Code, Section 1799.102(a), to state explicitly that "[n]o person who in good faith, and not for compensation, renders emergency medical *or nonmedical* care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission." (Emphasis added.) *See Verdugo v. Target Corp.,* 59 Cal.4th 312, 327, 173 Cal.Rptr.3d 662, 327 P.3d 774 (2014).

[2] Notably, medical dictionaries, which have relevance to the statute given its intent and scope, do not inject notions of foreseeability into the definition of emergency:

> The Attorney's Dictionary of Medicine defines "emergency" as "[a]n urgent demand for medical or surgical action; a medical or surgical condition demanding immediate action." 2 J.E. Schmidt, Attorney's Dictionary of Medicine E 71 (1999). Stedman's Medical Dictionary defines "emergency" as "[a]n unlooked for contingency or happening; a sudden demand for action." Stedman's Medical Dictionary 456 (24th ed.1982).

*Rivera v. Arana*, 322 Ill.App.3d 641, 650-651, 749 N.E.2d 434 (2001), *abrogated on other grounds by Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd.,* 2014 IL 115526, 379 Ill.Dec. 51, 6 N.E.3d 128.

{¶ 57} The Sixth District's definition of "emergency" in *Goebel's*, based on the definition of "emergency" as it appeared in a 1983 dictionary, is more consistent with the common meaning of the word at the time of the statute's enactment. And that definition—"a sudden or unexpected occurrence * * * demanding prompt action; urgent necessity"—omits the notion of foreseeability. *See Goebel's,* 58 Ohio App.3d at 26, 567 N.E.2d 1330, quoting Webster's New Universal Unabridged Dictionary 593 (2d Ed.1983).

*Ohio courts interpret "emergency" without reference to foreseeability in other statutory schemes*

{¶ 58} Third, when the term "emergency" is undefined in a statute, Ohio's courts often have interpreted the word without reference to foreseeability.

{¶ 59} In the context of a statute requiring "emergency medical or hospital care" for the indigent, this court has recognized that "commonly understood, an emergency is a sudden or unexpected occurrence which demands *immediate* action." (Emphasis sic.) *Mansfield Gen. Hosp. v. Richland Cty. Bd. of Cty. Commrs.,* 170 Ohio St. 486, 166 N.E.2d 224 (1960), paragraph 3 of the syllabus. And as the Tenth District succinctly explained in another context,

> [B]ecause the term "emergency" in R.C. 2917.13(A)(1) is undefined by statute, the term is given its common, everyday meaning. The common dictionary definition of "emergency" is " ' "an unexpected situation or sudden occurrence of a serious and urgent nature that demands immediate attention." ' "

*State v. Zaleski*, 10th Dist. Franklin No. 10AP-101, 2010-Ohio-5557, ¶ 12, quoting *State v. Blocker,* 10th Dist. No. 06AP-313, 2007-Ohio-144, at ¶ 51, quoting *Wolf,* 2004-Ohio-2479, ¶ 40, quoting American Heritage Dictionary (2d College Ed.1922).

{¶ 60} When defining the term "emergency call" for purposes of political-subdivision liability under R.C. 2744.02(B)(1), our appellate courts recognized that the definition is a broad one and one that they are "reluctant to abridge." *Carter v. Columbus*, 10th Dist. Franklin No. 96APE01-103, 1996 WL 465252, *3 (Aug. 15, 1996). *See also Bates v. Cincinnati*, 1st Dist. Hamilton Nos. C-960659 and A-9306972, 1997 WL 684840, *2 (Oct. 31, 1997) (describing the "open-ended definition of 'emergency call' as provided by the legislature" in R.C. 2744.01(A)). Similarly, Ohio courts broadly define "emergency" when characterizing situations to which emergency personnel respond. *See, e.g., Campbell*, 113 Ohio App.3d at 20, 680 N.E.2d 201, citing *Moore v. Columbus,* 98 Ohio App.3d 701, 706, 649 N.E.2d 850 (1994) (definition of "emergency" is open-ended and not limited to inherently dangerous situations or situations in which human life is in danger); *Goebel's,* 58 Ohio App.3d at 26, 567 N.E.2d 1330 (term "emergency patient" does not require that the patient's condition be life-threatening). *See also Radecki v. Lammers*, 15 Ohio St.2d 101, 103, 238 N.E.2d 545 (1968) (in wrongful-death case in which the "sudden emergency" doctrine was implicated, finding no error in jury instruction stating that "[a]n emergency arises when there is a sudden or unexpected occurrence, or combination of occurrences which demand prompt action" when the facts supported the instruction); *Miller v. McAllister*, 169 Ohio St. 487, 160 N.E.2d 231 (1959), paragraph six of the syllabus ("In a negligence action, the so-called 'emergency doctrine' applies only where there was a sudden and unexpected occurrence of a transitory nature which demanded immediate action without time for reflection or deliberation and does not comprehend a static condition which lasted over a period of time").

{¶ 61} Consistent with the broad judicial definitions of "emergency" in other Ohio statutory schemes, I would not limit an "emergency" for purposes of R.C. 2305.23 to those that are unforeseeable.

*Other state courts interpret "emergency" in their Good Samaritan statutes without reference to foreseeability*

**{¶ 62}** Notably, other states have not limited the term "emergency" in their Good Samaritan laws to emergencies that are unforeseeable. Instead, they focus both on the nature of an emergency and the purpose of Good Samaritan laws. As a California appellate court explained,

> An emergency within the meaning of the Good Samaritan statutes exists when there is an urgent medical circumstance of so pressing a character that some kind of action must be taken. It would seem obvious that in determining whether a patient's condition constitutes such an emergency the trier of fact must consider the gravity, the certainty, and the immediacy of the consequences to be expected if no action is taken. However, beyond observing that these are the relevant considerations, the variety of situations that would qualify as emergencies under any reasonable set of criteria is too great to admit of anything approaching a bright line rule as to just how grave, how certain, and how immediate such consequences have to be.

(Citations omitted.) *Breazeal v. Henry Mayo Newhall Mem. Hosp.,* 234 Cal.App.3d 1329, 1338, 286 Cal.Rptr. 207 (1991). *See also Newhouse v. Osteopathic Examiners Bd.,* 159 Cal.App.2d 728, 735, 324 P.2d 687 (1958) (an emergency exists "where the exigency is of so pressing a character that some kind of action must be taken").

**{¶ 63}** In formulating definitions of "emergency," other courts have effectuated the public policies that drove the enactment of Good Samaritan laws but recognized the limitations of torts, from which the Good Samaritan doctrine

devolves. For example, in Texas law, "An 'emergency' is a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the person in question and which calls for immediate action on his part and without time for deliberation." *Eoff v. Hal & Charlie Peterson Found.*, 811 S.W.2d 187, 191 (Tex.App.1991), citing *Goolsbee v. Texas & New Orleans RR. Co.,* 243 S.W.2d 386, 388 (Tex.1951). Thus, it is not necessary to use the legal concept of foreseeability to limit the scope of an "emergency" for purposes of R.C. 2305.23.

**Summary Judgment was Entered Improperly by the Trial Court and Affirmed by the Appellate Court; the Determination of Emergency is a Question of Fact for a Jury**

{¶ 64} As the opinion of my fellow dissenter illustrates, reasonable minds may differ as to whether an emergency was extant in the cause before us. That dissenting opinion illustrates why the determination of whether an emergency exists for purposes of R.C. 2305.23 is a question of fact for the jury rather than a question of law for the judge.

{¶ 65} Although this court has never directly addressed this issue, our trial courts correctly recognize that, at least in some cases, whether the statutory elements of R.C. 2305.23 have been proven are questions for the jury. *See, e.g., Dayton v. Brennan*, 64 Ohio Law Abs. 525, 112 N.E.2d 837 (M.C.1952) (whether an emergency existed that would exempt an officer from speeding laws is a question of fact for the jury). *Accord Butler v. Rejon*, 9th Dist. Summit No. 19699, 2000 WL 141009 (Feb. 2, 2000) (trial court's refusal to instruct the jury on the Good Samaritan statute was proper because there was no evidence to support the defense, indicating that had there been sufficient evidence, the question would have gone to the jury).

{¶ 66} Our sister courts have directly addressed the propriety of summary judgment in the context of Good Samaritan laws. "[T]here is ample authority that

[the] applicability [of the Good Samaritan statute] as to whether an emergency existed or not may be a question of fact for the jury." *Jackson v. Mercy Health Ctr.,* 1993 OK 155, 864 P.2d at 846 (Summers, J., dissenting).

**{¶ 67}** As the Supreme Court of North Dakota has explained, a Good Samaritan act is essentially a defense that requires the proponent to establish that he or she reasonably believed that an emergency was occurring, that immediate action was required to prevent death or serious injury, and that he or she could successfully assist the party in peril. *McDowell*, 2001 ND 91, 626 N.W.2d 666, ¶ 21. *Accord Willingham v. Hudson*, 274 Ga.App. 200, 202-203, 617 S.E.2d 192 (2005) (noting that the burden of proof rested upon the proponent of the state's Good Samaritan immunity defense, that he discharged his burden by citing affidavits, deposition testimony, and medical records and invoices, and that the burden then shifted to the person who had been in peril to point to specific documentary evidence of record, beyond mere accusations, that gave rise to a triable issue refuting the applicability of Good Samaritan immunity).

**{¶ 68}** Evaluating the putative Good Samaritan requires looking at the "overall perception of the nature and severity of the injury or illness and the total emergency situation." *McDowell* at ¶ 21. "Thus, the statute combines elements of the reasonable person standard as well as the aider's subjective state of mind. Generally, issues involving the reasonable person standard and a person's subjective state of mind are inappropriate for disposition by summary judgment." *Id.* And the question whether there is an emergency that warrants application of a Good Samaritan statute is "an issue of fact not amenable to summary judgment disposition." *Id.*, citing *Travers v. Vaz,* 714 A.2d 603, 604 (R.I.1998). *See also Charleston Station, L.L.C. v. Stephens*, Nev.Sup.Ct. No. 63943, 2015 WL 9480322, *3 (Dec. 23, 2015) (in appeal arising in part from the application of Nevada's Good Samaritan act, reiterating rule that "[e]xcept in rare cases where the reasonableness of the defendant's actions is clear, determining whether a defendant acted

reasonably is a question of fact for the jury to decide"); *Travers* at 604 ("whether there existed an emergency situation that warranted the application of the Good Samaritan statute is also an issue of fact"); *Jefferson Cty. School Dist. R-1 v. Justus*, 725 P.2d 767, 771 (Colo.1986) (holding that the application of the "assumed duty" or Good Samaritan doctrine is "obviously not a purely legal question," but rather, a mixed question of law and fact).

{¶ 69} I would hold, consistent with other states' high and appellate courts, that whether a party has properly invoked the application of a Good Samaritan statute is a mixed question of law and fact for the jury, at least in some cases. This is such a case.

## CONCLUSION

{¶ 70} I dissent as to the definition of "emergency" provided by the majority that limits emergencies to "unforeseeable" situations, and I dissent from its judgment, which affirms the grant of summary judgment on an issue that should be decided by the jury.

LANZINGER, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 71} I agree with both paragraphs of the syllabus; they are good law, and just, too. But the majority opinion applies the law a bit too loosely for one simple reason: the situation that confronted Larry Reese Jr. was not an emergency; therefore, he ought not to be protected by the Good Samaritan statute.

{¶ 72} The Good Samaritan statute does not apply to this case because, although Reese provided care, he did so when urgent or immediate action was not necessary. Dennis Carter was trapped, to be sure. But he was not in pain, and he was not in danger. He was inconvenienced and he wanted to get out, but the situation did not demand urgent action. It demanded rational action, reasoned to fit

the situation. Hesitation or delay was not dangerous to Carter, because he was not in pain and no detrimental change in his situation was imminent.

{¶ 73} The majority opinion defines an emergency as " 'an unforeseen combination of circumstances or the resulting state that calls for immediate action,' " quoting *Webster's Third New International Dictionary* 741 (1986). Majority opinion at ¶ 31. "Immediate action" was not needed to help Carter, as it would have been if, for example, he were about to fall off a building or if the truck had been rolling toward him. What Carter needed was a person competent to move a tractor-trailer forward without allowing any movement backward. That did not have to be done immediately or urgently—it needed to be done well. Unfortunately, it was not done well, because Reese didn't know how to drive a tractor-trailer. Reese should have sought assistance from a competent driver. Instead, he inserted himself into a situation that did not demand immediate action and made the situation much worse. Because the situation did not demand immediate or urgent action, Reese should not be shielded by the Good Samaritan statute, which only protects those who render care when there is an emergency.

{¶ 74} Although I agree with the syllabus, I disagree with today's judgment. I would reverse the court of appeals' judgment on the merits. Accordingly, I dissent.

_____

Robert A. Winter Jr. and Stephanie Collins, for appellants.

Markesbery & Richardson Co., L.P.A., Katherine A. Clemons, and Glenn A. Markesbery, for appellee Larry Reese Jr.

_____